PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-4325
_____

GRAY HOLDCO, INC.,

Appellant

v.

RANDY CASSADY and
RWLS, LLC

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 2-09-cv-01519)
Honorable Robert C. Mitchell, Magistrate Judge
sitting pursuant to 28 U.S.C. § 636(c)(i)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 23, 2011

BEFORE:  HARDIMAN and GREENBERG, <u>Circuit</u> <u>Judges</u>,
and POLLAK*, <u>District</u> <u>Judge</u>

(Filed: August 17, 2011)
_____

Ryan P. Hartman
Fulbright & Jaworski
801 Pennsylvania Avenue, N.W.
Suite 500
Washington, DC 20004-0000

Thomas H. May
Dickie, McCamey & Chilcote
Two PPG Place
Suite 400
Pittsburgh, PA 15222-5402

Gerard G. Pecht
Fulbright & Jaworski
1301 McKinney Street
Suite 5100
Houston, TX 77010-0000

      <u>Attorneys for Appellant</u>

_____

*Honorable Louis H. Pollak, Judge of the United States
 District Court for the Eastern District of Pennsylvania,
 sitting by designation.

Kevin P. Lucas
Erin M. Lucas
Manion, McDonough & Lucas
600 Grant Street
U.S. Steel Tower, Suite 1414
Pittsburgh, PA 15219-0000

      Attorneys for Appellee Randy Cassady

Heather J. Brandau
Willman & Arnold
705 McKnight Park Drive
Pittsburgh, PA 15237-0000

Terrance R. Henne
Concetta A. Silvaggio
Willman & Silvaggio
5500 Corporate Drive
Suite 150
Pittsburgh, PA 15237

      Attorneys for Appellee RWLS, LLC

_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

## I. INTRODUCTION

This matter comes on before this court on an appeal from orders the District Court[1] entered on November 10, 2010, denying appellant Gray Holdco, Inc.'s (Gray) Motion to Stay Proceedings in the District Court pending the outcome of a separate arbitration proceeding of its claims against appellee Randy Cassady (Cassady) and granting Cassady's Motion to Enjoin the same arbitration proceedings. Gray made the arbitration demand more than ten months after it initiated this civil suit in the District Court on November 13, 2009, alleging that Cassady breached the employment contract between him and Gray and that Cassady and a new business venture that he established, RWLS, were interfering with Gray's contractual relationships.[2] On September 17, 2010, Gray, pursuant to an arbitration provision in an agreement between it and Cassady, filed the demand to arbitrate its claims against Cassady with the American Arbitration Association ("AAA") in Delaware and filed the Motion to Stay the Proceedings against Cassady in the District Court.[3] Cassady opposed the Motion to Stay and filed

[1] A magistrate judge entered all the District Court orders that we discuss in this opinion inasmuch as the parties consented to proceed before a magistrate judge under 28 U.S.C. § 636(c)(i).

[2] In certain portions of the record and in appellant's brief "RWLS" sometimes is referred to as "Renegade."

[3] RWLS is not a party to the arbitration agreement and it and Cassady were distinct parties represented by different attorneys in the District Court. Moreover, Cassady's attorneys filed an appellee's brief on this appeal only on behalf of Cassady, and, although RWLS's attorneys have filed an appearance on the

the Motion to Enjoin the arbitration proceedings arguing that Gray, through its initiation and pursuit of this litigation in the District Court, waived the right to enforce the arbitration agreement. Inasmuch as we agree with the District Court that Gray waived its right to enforce the arbitration agreement, we will affirm the Court's orders.

## II.    FACTS AND PROCEDURAL HISTORY

In June 2006, Cassady began work for Gray's second-tier operating subsidiary, Gray Wireline Service, Inc. (Gray Wireline), a cased-hole wireline business, as a manager of its facility in Granbury, Texas. Gray alleges that, as part of Cassady's employment agreement with Gray Wireline, he agreed to an "Option Agreement" with "certain restrictive covenants" which prohibited him from: (1) misusing Gray Wireline's confidential information; (2) engaging in business while still an employee of Gray Wireline; (3) competing with Gray Wireline for two years after the end of his employment with Gray Wireline; and (4) soliciting Gray Wireline employees for one year following the end of his employment relationship with Gray Wireline. App. at 74-77. Gray Wireline also alleges that an additional agreement between Gray and Cassady, entitled the 2006 New Hire Stock Option Plan, contains the following arbitration provision:

SECTION 13. ARBITRATION. Any dispute or

appeal, RWLS is not participating in this appeal.

controversy between the Company and a Participant, arising out of or relating to this Plan or the Participant's Option Agreement, the breach of this Plan or the Participant's Option Agreement, or otherwise, shall be settled by arbitration in Wilmington, Delaware administered by the American Arbitration Association in accordance with its Commercial Rules then in effect and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. . . . [E]ither party may, without inconsistency with this arbitration provision, apply to any court having jurisdiction over such dispute or controversy and seek interim provisional, injunctive or other equitable relief until the arbitration award is rendered or the controversy is otherwise resolved.

Id. at 70-71.[4]

In March 2009, Gray Wireline promoted Cassady to

---

[4] We recognize that Cassady denies that the 2006 New Hire Stock Option Plan ever was enforceable against him, though we do not address that contention. We also note that the parties on this appeal make no distinction between Gray and Gray Wireline with respect either to the entity employing Cassady or to the party to their agreements with Cassady and thus, in effect, they treat Gray and Gray Wireline as a single entity. In these circumstances, we similarly are treating Gray and Gray Wireline as a single entity, as, indeed, did the District Court.

District Manager of its facility in New Kensington, Pennsylvania, and in July 2009, Cassady rose to the position of Region Manager of Gray Wireline's operations in Pennsylvania, Louisiana, and Mississippi. According to Gray, on September 21, 2009, Cassady resigned his position at Gray Wireline and formed RWLS, an entity that competed with Gray in the cased-hole wireline business. Gray also alleges that Cassady solicited multiple Gray Wireline employees to join RWLS and solicited Gray Wireline customers to transfer their business to RWLS.

On November 13, 2009, Gray filed the complaint in this action in the District Court against Cassady and RWLS, asserting that Cassady breached the Option Agreement and tortiously interfered with Gray's existing contractual relationships. The complaint also asserted claims of unjust enrichment and civil conspiracy based on Cassady and RWLS's solicitation of Gray clients and employees. The complaint primarily requested injunctive relief although it also sought money damages. Significantly, the complaint did not mention the arbitration agreement in the New Hire Stock Option Plan or include any arbitration clause in the employment agreement labeled as "Exhibit A" which Gray attached to the complaint. On the same day that Gray filed the complaint, it filed a motion for a preliminary injunction against both defendants, requesting that the Court enjoin them from, among other things, soliciting Gray's customers and employees.

On November 17, 2009, Gray filed a motion for expedited discovery which the District Court granted the next day. An attorney representing RWLS filed an appearance in the

District Court on November 20, 2009, and a separate attorney representing Cassady filed an appearance on November 25, 2009.  Cassady and RWLS then filed a joint motion opposing expedited discovery.  On December 4, 2009, the Court conducted a discovery conference during which the parties agreed to a discovery schedule and the Court set the dates for hearing the application for a preliminary injunction as January 12-13, 2010.

The parties intensely litigated the preliminary injunction proceedings.  In the discovery Gray served 15 requests for the production of documents and 11 interrogatories and deposed Cassady and a corporate representative of RWLS.  Cassady propounded 118 requests for production of documents and RWLS propounded 15 requests for production of documents, 7 requests for admissions, and 13 interrogatories.  The District Court conducted an evidentiary hearing on the preliminary injunction application and on January 13, 2010, following the conclusion of the hearing, the Court filed an opinion setting forth its conclusion that Gray did not meet its burden to establish that it was entitled to injunctive relief under Federal Rule Civil Procedure 65.  In its conclusion, the Court, inter alia, held "as a matter of law, that the agreement entered into between Cassady and the plaintiff is not enforceable" and that "the plaintiff has not demonstrated that it will likely succeed on the merits." Gray Holdco, Inc. v. Cassady, Civ. No. 2:09-cv-1519, 2010 WL 235106, at *5 (W.D. Pa. Jan. 13, 2010) (Gray I).  Consequently, the Court denied Gray's motion for a preliminary injunction.

On March 2, 2010, the parties filed a Federal Rule Civil Procedure 26(f) discovery report and a proposed discovery plan.

8

On March 9, 2010, the District Court conducted a status conference and set deadlines for mediation and for filing motions for judgment on the pleadings. On March 19, 2010, Cassady and RWLS separately moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) or, in the alternative, to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), with Cassady asserting that the Court's findings at the preliminary injunction hearing were "law of the case" and barred Gray's claims as a matter of law and RWLS asserting that Gray did not suffer any damage as a result of Cassady's alleged contract breach. As a matter of convenience we will refer to the motions simply as motions to dismiss. Gray filed a brief opposing the motions to dismiss. On June 8, 2010, the Court held another status conference and established discovery deadlines and on June 30, 2010, the Court denied Cassady's and RWLS's motions to dismiss.

On September 17, 2010, after obtaining a new attorney, Gray filed a demand for arbitration against Cassady with the AAA in Delaware. Gray based the demand on the arbitration clause included in the New Hire Stock Option Plan that we already have quoted. Then, on September 21, 2010, Cassady filed a motion in the District Court to enjoin the arbitration and to impose sanctions under 28 U.S.C. § 1927. In the motion, Cassady argued that Gray waived its right to arbitrate by participating in substantial litigation and discovery in the District Court and by acting inconsistently with its later action seeking to enforce its right to arbitrate. The following day Gray filed a motion pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., in the District Court to stay the judicial proceedings as to Cassady pending the outcome of the Delaware

9

arbitration. Gray argued that the arbitration agreement was mutual and enforceable and that Cassady could not demonstrate the necessary prejudice arising from Gray's participation in the litigation to justify the Court to hold that it waived its right to arbitrate. Cassady opposed the motion and renewed its argument that Gray waived its right to enforce the arbitration provision and also contended that the provision was not enforceable against him.

The District Court granted Cassady's motion to enjoin the arbitration and denied Gray's motion to stay the proceedings pending arbitration. It did not, however, impose sanctions against Gray. In its opinion accompanying its orders, the Court determined that three of the six non-exclusive factors we outlined in Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912 (3d Cir. 1992), for determining whether a party has waived its right to arbitrate weighed in favor of finding waiver, one factor weighed against finding waiver, and two factors were neutral. Gray Holdco, Inc. v. Cassady, Civ. No. 2:09-cv-1519, 2010 WL 4687744, at *5 (W.D. Pa. Nov. 10, 2010) (Gray II). Inasmuch as the Court found that Gray waived its right to enforce the arbitration provision, it did not decide whether in the absence of the waiver the arbitration provision would have been enforceable. Gray filed a notice of appeal challenging the Court's denial of its request for a stay and granting Cassady's request to enjoin the arbitration proceedings.

III.    JURISDICTION AND STANDARD OF REVIEW

10

The District Court had jurisdiction over this diversity of citizenship action under 28 U.S.C. § 1332(a)(1). Although, generally, with exceptions not applicable here, we only have jurisdiction to hear appeals from district courts' final orders, we have jurisdiction in this case under the FAA to hear an appeal from the District Court's order denying a request to stay the proceedings pending arbitration and granting Cassady's request to enjoin the arbitration proceedings. See 9 U.S.C. § 16(a)(2); Zimmer v. CooperNeff Advisors, Inc., 523 F.3d 224, 228 (3d Cir. 2008) (citing 9 U.S.C. § 16(a)(1)).

We exercise plenary review over both "questions of law concerning the applicability and scope of arbitration agreements" and whether a party "through its litigation conduct, waived its right to compel arbitration." Nino v. Jewelry Exch., Inc., 609 F.3d 191, 200 (3d Cir. 2010) (internal quotation marks and citations omitted). To the extent that a district court makes factual findings in making these determinations, we review its findings for clear error. Id.

IV.    DISCUSSION

The FAA provides that:

A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at

11

law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Supreme Court has stated that this provision reflects a "'liberal federal policy favoring arbitration.'" AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1745 (2011) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941 (1983)). Thus "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone, 460 U.S. at 24-25, 103 S.Ct. at 941; see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 476, 109 S.Ct. 1248, 1254 (1989) ("There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate."). Given this strong preference to enforce private arbitration agreements, we will not infer lightly that a party has waived its right to arbitrate and we will find that a party has waived the right "only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1068-69 (3d Cir. 1995) (internal quotation marks and citation omitted).

We also have held that a party seeking arbitration may waive its right to arbitration when the party opposing the arbitration demonstrates sufficient prejudice arising from the delay of the party seeking arbitration in making its demand. Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 223 (3d Cir.

2007). To that end, in Hoxworth we identified six non-exclusive factors to guide the prejudice inquiry: (1) timeliness or lack thereof of the motion to arbitrate; (2) extent to which the party seeking arbitration has contested the merits of the opposing party's claims; (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings; (4) the extent to which a party seeking arbitration engaged in non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and (6) the extent to which the parties have engaged in discovery. Hoxworth, 980 F.2d at 926-27. While these factors generally are indicative of whether a party opposing arbitration would suffer prejudice attributable to the other party's delay in seeking arbitration, the answer to the question of whether a party invoking the arbitration clause waived its right to arbitrate is necessarily case specific and thus depends on the circumstances and context of each case. Nino, 609 F.3d at 209.

The District Court determined that in a Hoxworth analysis the first and last factors were neutral, the fourth factor weighed against finding waiver and the remaining three factors weighed in favor of finding a waiver. We will consider each factor separately but first we will consider Gray's overarching argument that we should not factor its conduct in pursuing litigation seeking a preliminary injunction into our Hoxworth prejudice analysis. We point out that our weighing of the Hoxworth factors involves an analysis that goes beyond merely counting the factors for or against finding a waiver.

A.     "No Waiver" Clause

13

The arbitration agreement on which Gray relies contains a disclaimer that "either party may, without inconsistency with this arbitration provision, apply to any court having jurisdiction over such dispute or controversy and seek interim provisional, injunctive or other equitable relief until the arbitration award is rendered or the controversy is otherwise resolved." App. at 71. Gray argues that this provision precluded the District Court from considering its actions in pursuing litigation seeking a preliminary injunction in its analysis of the Hoxworth factors. The District Court disagreed and held that while Gray's pursuit of injunctive relief did not waive its right to arbitrate, neither did the "no waiver" clause act as a shield against a possible finding that Gray waived that right. Gray II, 2010 WL 4687744, at *3.[5] Gray contends that the District Court, by factoring the preliminary injunction proceedings into its Hoxworth waiver analysis, refused to enforce Gray's agreement with Cassady insofar as that agreement allowed Gray to apply for injunctive relief without waiving its right to arbitration.

We agree with the District Court that the clause in the New Hire Stock Option Plan allowing either party to seek injunctive relief until the arbitration award is rendered does not override the applicability of the Hoxworth multipart analysis which examines whether a party, by its participation in litigation, has waived its right to invoke arbitration. Thus, we

---

[5] Cassady disputes the characterization of the clause in the New Hire Stock Option Plan as a "no waiver" clause. We, however, do not find its characterization significant as we are concerned with the content of the clause rather than its characterization.

also agree with the holding in <u>S & R Co. of Kingston v. Latona Trucking, Inc.</u>, 159 F.3d 80, 86 (2d Cir. 1998), "that the presence of a 'no waiver' clause does not alter the ordinary analysis undertaken to determine if a party has waived its right to arbitration."

Gray distinguishes <u>Latona Trucking</u> by first arguing that the court in that case interpreted a "no waiver" clause[6] to allow a party seeking arbitration "to seek provisional remedies or other judicial proceedings that would not function to displace arbitration on the underlying dispute." Appellant's br. at 19 (quoting <u>Latona Trucking</u>, 159 F.3d at 85). Gray then argues that inasmuch as the appellant in <u>Latona Trucking</u> had not sought a preliminary injunction, which Gray categorizes as provisional relief, "the holding of <u>Latona Trucking</u> does not support the district court's conclusion that it could construct a finding of waiver based on Gray's efforts to secure a preliminary injunction." <u>Id</u>. Gray also argues that the District Court's decision to take its pursuit of a preliminary injunction into consideration in its waiver analysis was inconsistent with our opinion in <u>Ortho Pharmaceutical Corp. v. Amgen, Inc.</u>, 882 F.2d 806 (3d Cir. 1989).

In <u>Ortho Pharmaceutical</u> we indicated "that a district court has the authority to grant injunctive relief in an arbitrable

---

[6] The "no waiver" clause in <u>Latona Trucking</u> was an AAA rule incorporated into the parties' contract stating that: "No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate." <u>Latona Trucking</u>, 159 F.3d at 85.

15

dispute, provided that the traditional prerequisites for such relief are satisfied." Id. at 812. Yet we only were holding that a district court's action in exercising its equitable powers to grant a preliminary injunction was not inconsistent with the FAA and that a party does not waive its right to seek a preliminary injunction by entering into an arbitration agreement. Id. We did not address the distinct question of whether a party's conduct in pursuit of the preliminary injunction may establish prejudice in the context of an arbitration waiver inquiry. Moreover, while Latona Trucking did not involve a preliminary injunction, its rationale is applicable to this case: a party should not be allowed to delay its demand for arbitration and use federal court proceedings to "'test[] the water before taking [a] swim.'" 159 F.3d at 86 (quoting Home Gas Corp. of Mass., Inc. v. Walter's of Hadley, Inc., 532 N.E.2d 681, 685 (Ma. 1989)) (first alteration in original). In other words, "the fact that an arbitration agreement incorporates [a no waiver clause] would not prevent a court from finding that a party has waived arbitration by actively participating in protracted litigation of an arbitrable dispute." Id. at 85.

We disagree with Gray's argument that the District Court, through its consideration of the proceedings on the preliminary injunction application in its Hoxworth analysis, nullified the contractual provision allowing either party, without inconsistency with the arbitration provision, to pursue injunctive relief. To the contrary, the Court specifically recognized Gray's contractual right to apply for injunctive relief and honored that provision by not weighing its participation in discovery related to the application in determining whether Gray waived the right to arbitration. Gray II, 2010 WL 4687744, at *4.

16

Nevertheless, like the District Court, we think that the contractual no waiver provision does not require a court to disregard completely Gray's conduct in pursuit of the preliminary injunction. Adopting Gray's position that any conduct in pursuit of a preliminary injunction is exempt from a prejudice inquiry could allow a party, under the guise of seeking a preliminary injunction, to conduct discovery which would not be allowed in arbitration proceedings. See, e.g., Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Mkts. Corp., 996 F.2d 1478, 1480 (2d Cir. 1993) (per curiam) (holding that taking deposition of witnesses not available in arbitration proceedings is sufficient prejudice to find waiver of right to arbitrate); St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co., 969 F.2d 585, 591 (7th Cir. 1992) ("By delaying its demand for arbitration, Disco was able to obtain discovery it would not necessarily have been entitled to in an arbitration proceeding.").[7]

More fundamentally, in addition to addressing the important question of whether the non-moving party suffers prejudice from the moving party's delay in invoking an arbitration clause, a court, by finding that there has been a waiver of the right to arbitrate predicated on a party's litigation conduct, effectuates the principle that a party may not use arbitration to manipulate the legal process and in that process waste scarce judicial resources. See, e.g., Republic Ins. Co. v.

---

[7] As Gray points out, Cassady does not claim that he was prejudiced in this manner. However, the cases above demonstrate why we will not adopt the position which Gray advocates.

17

PAICO Receivables, LLC, 383 F.3d 341, 348 (5th Cir. 2004) (holding that a "no waiver" clause does not override district court's inherent authority to control its own docket and to find that a party, through extensive litigation, has waived its right to arbitrate); Nat'l Found. for Cancer Research v. A. G. Edwards & Sons, Inc., 821 F.2d 772, 776 (D.C. Cir. 1987) ("To give Edwards a second bite at the very questions presented to the court for disposition squarely confronts the policy that arbitration may not be used as a strategy to manipulate the legal process."). For example, if faced with a contract that stated that neither party implicitly would waive the right to arbitrate by engaging in extensive litigation inconsistent with that right a court would not need to dispense completely with a prejudice inquiry in analyzing whether one of the parties, through its pursuit of litigation, did, indeed, waive the right to arbitration. See Richard A. Lord, Williston on Contracts § 39:36 (4th ed. 2000) ("The general view is that a party to a written contract can waive a provision of that contract by conduct expressly or surrounding performance, despite the existence of a so-called anti-waiver or 'failure to enforce' clause in the contract.").

Therefore, while Gray's motion for a preliminary injunction in itself does not factor into the waiver inquiry, the question for purposes of finding an arbitration waiver remains whether Gray, through its litigation conduct, waived its right to compel arbitration because of the prejudice Cassady suffered attributable to Gray's delay in invoking its right to arbitrate. See Nino, 609 F.3d at 209. In answering that question, we find that it is appropriate to consider Gray's litigation conduct as a whole, including its conduct in its pursuit of a preliminary injunction.

18

B.     Timeliness

Gray filed its complaint and motion for preliminary injunctive relief against Cassady in the District Court on November 13, 2009, but did not file its demand for arbitration with the AAA until September 17, 2010.  Though, at least insofar as we are aware, Gray did not explain to the District Court its reason for the delay, the Court nevertheless held that Gray's ten-month delay, while "questionable," neither weighed in favor of nor against finding that Gray waived its right to arbitrate.  Gray II, 2010 WL 4687744, at *3.  Gray argues that the District Court nevertheless erroneously counted the time it spent litigating the preliminary injunction against it and ignored the fact that the parties did not actively pursue the litigation following the preliminary injunction hearing.[8]

In considering the timeliness question we first reject Gray's contention that the Court should have disregarded the time that Gray was seeking a preliminary injunction.  In this regard, we point out that there was no reason why Gray could not have demanded arbitration while it was seeking the preliminary injunction as there is no rule precluding a party from simultaneously traveling on both procedural avenues.  Indeed, Gray does not suggest that it could not have sought a preliminary injunction and demanded arbitration  in parallel proceedings.

---

[8] As we discuss below, we do not agree with Gray's contention that, after the preliminary injunction hearing, the parties were not engaged actively in litigation.

19

In any event, while we agree with the District Court that the ten-month period between Gray's initiation of the lawsuit in the District Court and its initiation of arbitration with the AAA is not, standing alone, outcome determinative on the waiver issue here, see Zimmer 523 F.3d at 232, the ten-month delay is substantially longer than the delays we have encountered in cases where we have not found a waiver of the right to arbitrate on a delay basis. See Palcko v. Airborne Express, Inc., 372 F.3d 588, 598 (3d Cir. 2004) (finding that 38-day delay, while not determinative, did not establish waiver where opponent of arbitration had not demonstrated prejudice); Wood v. Prudential Ins. Co., 207 F.3d 674, 680 (3d Cir. 2000) (holding that short delay of one-and-a-half months and lack of significant steps in litigation that could have caused prejudice to plaintiff counseled against finding waiver); Faragalli, 61 F.3d at 1069 (waiver not found after two-month delay with no showing of prejudice); Gavlik Constr. Co. v. H. F. Campbell Co., 526 F.2d 777, 783-84 (3d Cir. 1975) (holding that defendant did not waive right to arbitrate where it moved for stay pending arbitration immediately after removing case to federal court).

The foregoing cases should be contrasted to cases in which, after a party delayed seeking arbitration, we have found that it waived its right to arbitrate. These cases in which we found a waiver featured delays which were closer to ten months, the period of delay here. Thus, in Hoxworth itself we found a waiver following a more than 11-month delay where the party seeking the finding that there had been a waiver participated in numerous pretrial proceedings and engaged in extensive discovery. 980 F.2d at 925-27. And in Nino we found that a 15-month delay weighed in favor of a finding of waiver. 609

F.3d at 210.  Thus, in Nino we found that the first Hoxworth factor weighed in favor of finding that there was a waiver where the delay was significant and the explanations for its delay by the party seeking arbitration were unpersuasive.  Id.  It is significant that, at least to the best of our knowledge, Gray offered no explanation to the District Court for its delay in waiting ten months after filing suit in the District Court before seeking enforcement of the arbitration provision and that it certainly has not offered such an explanation on this appeal.[9]

Overall, we are satisfied that while the length of the time between when a party initiates or first participates in litigation and when it seeks to enforce an arbitration clause is not dispositive in a waiver inquiry, in this case this factor weighs in favor of finding waiver.

[9] In his answering brief Cassady suggests that the explanation for Gray's delay is that Gray made a "tactical decision" to seek arbitration after it failed in its attempt to secure preliminary injunctive relief and then switched attorneys.  Appellee's br. at 27.  Though it had the opportunity to do so when it filed its reply brief, Gray has not contended that Cassady's explanation was incorrect.  Even though we will not speculate on why Gray waited ten months after filing this litigation to demand arbitration of its dispute with Cassady, we cannot help but note that it appears that Gray's complaint was significantly weakened after the District Court held in denying the preliminary injunction application that "as a matter of law . . . the agreement entered into between Cassady and the plaintiff is not enforceable."  Gray I, 2010 WL 235106, at *5.  This point could not have been lost on Gray.

21

C.     Gray's contesting of Cassady's claims

The second Hoxworth factor is the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims.  The wording of this factor as usually set forth suggests that the factor is immaterial in this case because Cassady has not filed any counterclaims against Gray and thus there was no litigation in which Gray would have had reason to contest any claim against it.  In Hoxworth we formulated this factor in the way we did because in Hoxworth, as in most cases in which there is an arbitration demand after the initiation of litigation, the defendant invokes an arbitration provision after the plaintiff files the court action.  See, e.g., Gavlik, 526 F.2d at 780.  But this case is unusual because Gray both initiated this litigation and, more than ten months later, invoked the right to arbitrate the claims it already had advanced judicially.  Nevertheless, we agree with the District Court that a literal reading of this factor would support Gray's attempt to avoid scrutiny of its litigation activity in a Hoxworth analysis.  Accordingly, to make the factor germane here, we, like the District Court, will apply this factor by examining the degree to which Gray participated in substantive legal proceedings and "has pursued or challenged the legal positions and arguments advanced by the respective parties [in this litigation]."  Gray II, 2010 WL 4687744, at *3.

The District Court held that this factor weighed strongly in favor of waiver inasmuch as Gray "participated in considerable legal action, no matter its context, related to the substantive merits of the underlying lawsuit."  Id.  Specifically, the Court pointed to the fact that in pursuit of a preliminary

22

injunction motion Gray called four witnesses, cross-examined five witnesses, and introduced numerous exhibits into evidence. Moreover, the Court noted that Gray filed briefs opposing Cassady's and RWLS's motions to dismiss.[10] Gray argues that the District Court erred because it considered Gray's conduct during the preliminary injunction proceedings, and because it erroneously considered its defense against Cassady's motion to dismiss Gray's allegations.

Gray first argues that the District Court's consideration of its pursuit of a preliminary injunction will "eviscerate" our holding in Ortho Pharmaceutical because every preliminary injunction proceeding necessarily entails an inquiry into whether a "movant has shown a reasonable probability of success on the merits." Appellant's br. at 25 (citing Am. Civil Liberties Union v. Ashcroft, 322 F.3d 240, 247 (3d Cir. 2003) (identifying probability of success on merits as requirement to obtaining preliminary injunction)). This argument is without force for in a preliminary injunction proceeding a district court analyzes a movant's likelihood of success on the merits of its claims without affecting the movant's ability later to arbitrate those claims if the movant files its motion for a preliminary injunction when it already has sought to arbitrate the dispute. Indeed, this was the exact scenario we addressed in Ortho Pharmaceutical, 882 F.2d at 809. Even where the party moving for a preliminary injunction does so before filing for arbitration, it can avoid waiving its right to arbitrate by notifying the opposing party of

---

[10] Of course, Gray's opposition to RWLS's motion is immaterial inasmuch as the Gray-RWLS dispute was not subject to arbitration.

its intent to invoke arbitration in the future. Here, Gray did neither, and thus the District Court did not err in considering Gray's conduct during the proceedings on its preliminary injunction application in analyzing the second Hoxworth factor.

The District Court also properly considered Gray's opposition to Cassady's motion to dismiss in the waiver analysis. Gray argues that this Hoxworth factor should not apply to a moving party's defense against a motion to dismiss because it is intended to prevent a movant from getting a second bite at the apple by filing a motion to dismiss and then filing a motion to compel arbitration if the motion to dismiss is not successful. Of course, it is ironical that Gray makes this two-bite argument because here it is Gray that is seeking a second bite by seeking arbitration after it failed in its attempt to secure a preliminary injunction. In that regard, we note that when it sought arbitration Gray knew that the District Court already had held "as a matter of law, that the agreement entered into between Cassady and the plaintiff is not enforceable." Gray I, 2010 WL 235106, at *5. Thus it is not difficult to find prejudice where a party, such as Gray, is allowed to test out the merits of its case in a preliminary injunction application but then resorts to arbitration when it becomes apparent that the court regards its case as standing on weak footing. In any event, as we stated in Nino, the focus of this factor is whether a party engaged "in motion practice on the merits prior to moving to compel arbitration." Nino, 609 F.3d at 210-11. By responding to Cassady's motion to dismiss, Gray undoubtedly engaged in

motion practice on the merits of the dispute.[11]

Therefore, like the District Court, we find that this factor weighs in favor of finding waiver.

D.      Gray's Late Notification to Cassady of Its Intent to Arbitrate

The third factor in the Hoxworth balancing test asks whether Gray informed Cassady of its intent to seek arbitration before it filed its motion to stay the District Court proceedings. 980 F.2d at 926-27. The Court held that this factor weighed heavily in favor of finding waiver inasmuch as Gray notified Cassady of its intent to arbitrate on September 17, 2010, the same day that it filed its demand for arbitration with the AAA. Gray acknowledges that it did not provide Cassady with earlier notice of its intent to arbitrate but argues that this factor should be neutral because Cassady has not shown that it suffered any prejudice from Gray's failure to provide earlier notice.

---

[11] We point out that one might have expected that Gray would have moved to compel arbitration as soon as Cassady filed his motion to dismiss if Gray had an intent at that time to seek arbitration later. After all, if Gray had that intent at the time Cassady filed the motion to dismiss it would seem that it would have been almost reckless for it not to have demanded arbitration when it received the motion because if the District Court granted the motion and Gray later demanded arbitration Cassady undoubtedly would have raised the preclusive effect of the Court's order in the arbitration proceedings.

We reject Gray's argument that Cassady has not suffered any prejudice due to Gray's failure to provide notice of its intent to arbitrate in this case. In the arbitration waiver context we have recognized two distinct types of prejudice: substantive legal prejudice and prejudice a party suffers due to the unnecessary delay and expense of having to litigate a case that an arbitrator later decides. See Ehleiter, 482 F.3d at 224. A showing of either type of prejudice is sufficient for a party objecting to arbitration to prevail in the waiver inquiry. Id.

Gray argues that the case was dormant and "there was literally no activity going on" for much of the ten months between Gray's initiation of the proceedings in the District Court and its demand for arbitration. Appellant's br. at 27. However, we have stated that "a party's capacity to develop a litigation strategy with regard to the likelihood of arbitration diminishes the longer the case is litigated with no . . . indication that a motion to compel arbitration is forthcoming." Nino, 609 F.3d at 211. In Nino, we held that even though the party seeking arbitration included mandatory arbitration as one of the ten affirmative defenses in its answer to the plaintiff's complaint, the third Hoxworth factor weighed in favor of finding a waiver of the right to arbitrate because the significance of the notice diminished the longer the defendant delayed in moving to compel arbitration. Id. at 211-12. Specifically, we stated that notice of arbitration could change a party's approach to discovery as well as its litigation strategy based on whether it could recover attorney's fees. Id. at 211.

Between the time the District Court denied preliminary injunctive relief and Gray filed its notice of arbitration, Cassady

26

filed a motion to dismiss,[12] the parties set a discovery schedule and submitted a Rule 26(f) discovery plan, the District Court held status conferences, and the parties participated in mandatory mediation. Cassady argues that during these proceedings, it conducted its defense preparation "with the understanding and reasonable expectation . . . that the parties' entire dispute would be resolved by a jury in a single trial conducted in the District Court."[13] Appellees' br. at 39. Therefore, Gray's failure to notify Cassady of its intent to seek arbitration substantively has prejudiced Cassady's approach to this case.

In addition to substantive legal prejudice, Cassady also argues that he had to expend considerable time and money to educate his attorney to defend him in preparation for a trial in the District Court. Cassady further points out that the threat to his livelihood "likely will be outstanding . . . in excess of two

[12] Of course, RWLS filed a similar motion but we are not considering it in our analysis.

[13] Notwithstanding Cassady's expectations, even if we disregard the possibility of a resolution of this case on a summary judgment motion, in which event there will not be a trial in this case, we can see two possible reasons why this case might not be resolved by a jury: (1) as a matter of law the District Court might hold that there is no right to a jury trial inasmuch as Gray in its complaint primarily was seeking injunctive relief; and (2) the District Court might rule that Cassady waived its right to a jury trial in its agreement with Gray. We have no need to address those possibilities now.

years—far longer than necessary if Gray Holdco had remained committed to its originally selected forum . . . ." Appellee's br. at 45. We agree that the time and expense that Cassady incurred in opposing Gray's suit and the resulting delay weigh in favor of finding waiver.

In reaching our conclusion, we have no doubt that Cassady has expended considerable resources in defending against Gray's lawsuit. Even setting aside the discovery during the preliminary injunction phase of the litigation, Cassady has had to retain counsel to represent him in this litigation for several months. While Gray argues that after the District Court denied its application for a preliminary injunction the case was "dormant" and there was "literally no activity going on," (appellant's br. at 27-28) a review of the record demonstrates that this characterization is inaccurate. As we have discussed, the District Court held three status conferences, and the parties filed a Rule 26(f) discovery report and attended a court ordered mediation hearing. At all of these proceedings the clock on Cassady's legal bill undoubtedly was running and, as Cassady points out, should the dispute proceed to arbitration under the New Hire Stock Option Plan he will be responsible for one-half of the professional fees and costs of the arbitrators. App. at 71. Thus, we cannot ignore the legal expenses Cassady incurred while Gray sat on its arbitration rights, expenses which would be compounded if the District Court did not enjoin the Delaware arbitration. See, e.g., Cotton v. Slone, 4 F.3d 176, 180 (2d Cir. 1993) ("Slone's conduct has imposed unnecessary expense and delay on Cotton, which would be compounded if she were now required to arbitrate her claim.").

Second, Cassady makes a compelling argument that Gray's claims, which present a substantial threat to his livelihood, now have been outstanding for over two years (including during this appeal) due to Gray's delay in invoking the arbitration clause. When Gray filed its motion to arbitrate, the end of discovery was in sight and the parties would have been ready to file dispositive motions or to proceed to trial. If the District Court had granted Gray's motion to compel arbitration, the proceedings would have started again in a different forum, requiring the parties, at least to some degree, to duplicate the efforts they expended in the District Court and thus frustrating the fundamental purposes underlying arbitration:

> [A]rbitration is meant to streamline the proceedings, lower costs, and conserve private and judicial resources, and it furthers none of those purposes when a party actively litigates a case for an extended period only to belatedly assert that the dispute should have been arbitrated, not litigated, in the first place.

Nino, 609 F.3d at 209.

Due to Gray's delay in invoking the arbitration clause, this proceeding has not conserved private or judicial resources and it has been anything but streamlined. We thus agree that Gray's failure to notify Cassady of its intent to arbitrate weighs heavily in favor of finding waiver.

E.       Extent of Non-Merits Motion Practice

29

The District Court found that there had not been significant non-merits motion practice between Gray and Cassady and, therefore, this factor weighed against finding a waiver of Gray's right to arbitrate. Neither Gray nor Cassady argues that the District Court erred in its analysis of this factor and, therefore, we adopt the District Court's finding that this factor counsels against finding that Gray waived its right to arbitrate.

F.      Gray's Acquiescence to Pre-Trial Orders

The fifth Hoxworth factor asks to what extent a party "assent[ed] to the district court's pretrial orders." 980 F.2d at 927. The District Court found that Gray assented to its orders because it attended three status conferences, filed a Rule 26(f) discovery report, attended a court-ordered mediation, established discovery deadlines, including time limits for experts' reports and depositions, and then, eight days prior to filing for arbitration, requested and received extensions of time to complete discovery. Furthermore, Gray does not contend that it objected to participating in any of these proceedings. Gray argues that the District Court's holding ignores the circumstance that there would have been status conferences regardless of when Gray filed its motion to compel arbitration because the litigation in the District Court would have continued against RWLS even if there was arbitration of the dispute between Gray and Cassady. Gray contends, moreover, that the status conferences did not prejudice Cassady inasmuch as there was no discovery between the time of the preliminary injunction hearing and the time when Gray filed its Motion to Stay the Proceedings.

30

We agree with the District Court that Gray, through its assent to its orders, acted inconsistently with an intent to arbitrate. Gray compares this case with Nino in which we found that the defendant waived the right to arbitrate where he actively litigated the case for more than 15 months and engaged in "no fewer than ten pretrial conferences," and "extensive discovery." Nino, 609 F.3d at 199. However, in Nino we also stated that a "case-specific waiver analysis is not susceptible to precise line-drawing." Id. at 212. Thus, Nino does not establish a base line of what must be shown for acquiescence in pre-trial orders to waive the right to arbitrate.

Here, in addition to the three pre-trial conferences, the parties at the District Court's direction, engaged in mediation and filed Rule 26(f) discovery reports. Gray at no point during any of these proceedings indicated that it intended to invoke the arbitration clause. Further, the absence of discovery between the proceedings on the preliminary injunction application and the motion to stay the arbitration does not alleviate the litigation expenses, which we discussed above, that Cassady incurred by participating in status conferences, the mediation, and the filing of a discovery report. In that regard, Gray's argument that there would have been status conferences even if there had been arbitration because the litigation would have continued after the preliminary injunction hearing does not address the prejudice Cassady suffered inasmuch as Cassady and RWLS are separate entities represented by different attorneys in the District Court litigation. Thus, though the judicial proceedings may have continued following the denial of the preliminary injunction application, even if the Gray-Cassady dispute had been arbitrated, Cassady would not have needed to participate in

31

them.  Considering the factors that we have set forth we find that Gray's acquiescence to the District Court's pre-trial orders weighs heavily in favor of finding that Gray waived its right to arbitrate this dispute.

> G.    Extent to Which Both Parties Engaged in Discovery

The final Hoxworth factor focuses on the amount and scope of discovery in which the parties engaged prior to the request for arbitration.  The District Court found that while the parties' engaged in discovery during the preliminary injunction proceedings which was closely related to the merits of the underlying dispute, the arbitration clause authorized the parties to seek preliminary relief without jeopardizing their arbitration rights.  Thus, inasmuch as the parties did not engage in any discovery after the preliminary injunction hearing, the District Court held that the last factor neither weighed in favor nor against finding a waiver of Gray's right to arbitrate.

Gray argues that the lack of extensive discovery in this case should be a "powerful factor supporting enforcement of the arbitration provision in this case."  Appellant's br. at 31. However, like the District Court, we are not prepared to discount completely the preliminary injunction discovery which, in this case, was quite extensive: the parties took the depositions of eight separate individuals; exchanged extensive written discovery responses, including 200 separate interrogatories, requests for admission and written document production requests; the parties exchanged more than 20,000 pages of documents and submitted to the District Court approximately

32

100 pages of Proposed Findings of Fact and Conclusions of Law.[14]  Further, as the District Court held, the discovery was closely related to the merits of the dispute.  Overall, even considering the lack of further discovery after the preliminary injunction hearing, we agree with the District Court that the absence of such discovery, considered from Gray's viewpoint, at best is a neutral factor in a waiver analysis.

## V.    CONCLUSION

In sum, we find that four of the <u>Hoxworth</u> factors weigh in favor of finding that Gray waived its right to arbitrate, one factor is neutral and one factor weighs in favor of finding that Gray did not waive its right to arbitrate.  Moreover, it is clear that Cassady has suffered prejudice as a result of Gray's delay in invoking the arbitration clause.  If the arbitration goes ahead, the substantial time and expense that Cassady spent litigating the case in the District Court will to some degree need to be duplicated in the arbitration despite the fact that the dispute was close to proceeding to trial in the forum that Gray itself choose.

Moreover, we think that the overall circumstances of this

---

[14] Gray argues that Cassady served the majority of the document requests and took a majority of the depositions during the preliminary injunction proceedings.  In considering the sixth <u>Hoxworth</u> factor, however, we look at "the extent to which <u>both</u> parties have engaged in discovery."  <u>Hoxworth</u>, 980 F.2d at 927 (emphasis added) (citing <u>Gavlik</u>, 526 F.2d at 783).

case indicate that Gray, through its litigation conduct, has waived its right to arbitrate. From the beginning of this dispute, when Gray initiated the lawsuit without mentioning the arbitration provision in the New Hire Stock Option Plan to its compliance without objection to the District Court's various orders for ten months and its participation in extensive discovery and status conferences, Gray indicated, through its conduct, that it was choosing to litigate its dispute with Cassady. It changed its strategy from pursuing litigation to demanding arbitration only after it substituted attorneys, and it did so without any advanced notification to Cassady. In the meantime, Cassady had prepared its litigation strategy in anticipation of a trial in the District Court, and in that preparation participated in the significant proceedings that we have described and thus incurred expenses that would not have been necessary if this case is arbitrated. Considering all that has transpired, whether we weigh the Hoxworth factors qualitatively or quantitatively, we agree with the District Court that Gray waived its right to enforce the arbitration provision contained in the New Hire Stock Option Plan.[15] Accordingly, we will affirm the District Court's orders granting Cassady's motion to enjoin the Delaware arbitration and denying Gray's request to stay the judicial proceedings pending arbitration.

---

[15] As an alternative argument for affirming the District Court's order to enjoin the arbitration, Cassady argues that the arbitration clause is unenforceable. Inasmuch as we are affirming the District Court's orders denying arbitration on a waiver basis, we need not address this argument.

34