**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1430
_____

IN RE: PHARMACY BENEFIT MANAGERS ANTITRUST
LITIGATION
(MDL 1782)

BELLEVUE DRUG CO; ROBERT SCHREIBER INC,
d/b/a BURNS PHARMACY; REHN-HUERBINGER DRUG
CO., d/b/a PARKWAY DRUGS #4, on behalf of themselves
and all others similarly situated; PHARMACY FREEDOM
FUND; NATIONAL COMMUNITY PHARMACISTS
ASSOCIATION

v.

CAREMARKSPCS, f/k/a ADVANCEPCS
(D.C. Civil No. 03-cv-04731)

BELLEVUE DRUG CO.,
ROBERT SCHREIBER, INC., d/b/a BURNS
PHARMACY; REHN-HUERBINGER DRUG CO., d/b/a
PARKWAY DRUGS #4, on behalf of themselves
and all others similarly situated,

Appellants
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA
(D.C. Civil No. 03-cv-04731)
District Judges: Honorable Eduardo C. Robreno
Honorable C. Darnell Jones, II
_____

H. Laddie Montague, Jr., Esq (Argued)
David A. Langer, Esq.
Martin I. Twersky, Esq.
Berger & Montague
1622 Locust Street
Philadelphia, PA 19103

*Counsel for Appellants*

Michael D. Leffel, Esq. (Argued)
Foley & Lardner
150 East Gilman Street
Suite 5000
Madison, WI 53703
        -and-
Robert H. Griffith, Esq.
Foley & Lardner
321 North Clark Street
Suite 2800
Chicago, IL 60654

*Counsel for Appellee*

_____

Argued:  September 10, 2012
_____

Before: SCIRICA, ROTH and BARRY, Circuit Judges

(Opinion Filed:  November 15, 2012)
_____

OPINION OF THE COURT
_____

BARRY, *Circuit Judge*

Plaintiffs Bellevue Drug Co., Robert Schreiber, Inc., and Rehn-Heurbinger Drug Co. (collectively "Plaintiffs") appeal the District Court's order granting Defendant

2

AdvancePCS's motion to compel arbitration. Plaintiffs argue that the District Court erred in ordering them to arbitrate their antitrust claims because: (1) AdvancePCS waived its right to arbitrate by actively litigating the case in federal court for more than ten months prior to demanding arbitration; and (2) the arbitration clause is unenforceable because it limits the remedies that Plaintiffs can receive under the Sherman Act, and contains a fee-shifting provision that deters Plaintiffs from proceeding in arbitration. Because we agree with Plaintiffs that AdvancePCS waived its right to arbitrate, we will reverse the order of the District Court compelling arbitration, and need not reach those issues addressed to the clause itself.

## I. Background

The factual and procedural background underlying this case was extensively summarized in this Court's precedential decision disposing of an earlier appeal, *In re Pharmacy Benefit Managers Antitrust Litigation*, 582 F.3d 432 (3d Cir. 2009). We will not reprise the entire background here, but will set forth those facts necessary to our analysis of the waiver issue, and most particularly those facts preceding AdvancePCS's motion to compel arbitration.

AdvancePCS is a prescription benefits manager ("PBM") for drug benefit plans sponsored by employers, unions, government agencies, insurance plans and others ("Plan Sponsors"). PBMs are retained by Plan Sponsors to efficiently manage their benefit plans and to achieve cost savings for Plan Sponsors and plan members. PBMs achieve efficiencies and cost savings in a variety of ways, including negotiating discounts or rebates from drug manufacturers, providing mail order prescription service to plan members, contracting with retail pharmacies for reimbursement when prescriptions are filled for plan members, and electronic processing and paying of claims.

Plaintiffs are retail pharmacy businesses that entered into written Pharmacy Provider Agreements ("the Agreements" or "PPA") with AdvancePCS to provide

prescription drugs and related pharmacy services to persons covered by drug benefit plans administered by AdvancePCS. The PPA establishes the terms and conditions under which the Plaintiffs were to provide prescription drugs and services to plan members, and sets forth an agreed reimbursement rate that AdvancePCS will pay to the pharmacies. The PPA also contains an arbitration clause which provides:

> **Arbitration.** Any and all controversies in connection with or arising out of this Agreement will be exclusively settled by arbitration before a single arbitrator in accordance with the Rules of the American Arbitration Association. The arbitrator must follow the rule of law, and may only award remedies provided in this Agreement. The award of the arbitrator will be final and binding on the parties, and judgment upon such award may be entered in any court having jurisdiction thereof. Arbitration under this provision will be conducted in Scottsdale, Arizona, and Provider hereby agrees to such jurisdiction, unless otherwise agreed to by the parties in writing or mandated by Law, and the expenses of the arbitration, including attorneys' fees, will be paid by the party against whom the award of the arbitrator is rendered. This Section 9.5 and the parties' rights hereunder shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.

(App. 381-82.) The PPA also includes a severability clause, which provides:

> **Lawful Interpretation.** Whenever possible, each provision of this Agreement will be interpreted so as to be effective and valid under applicable Law, but if any provision of this Agreement should be rendered unenforceable or invalid under applicable Law, that provision will be ineffective to the extent of such

4

> unenforceability or invalidity without invalidating the remaining provisions of this Agreement.

(App. 381.)

On August 15, 2003, Plaintiffs filed a putative class action lawsuit on behalf of themselves and all other similarly-situated pharmacies that contracted with AdvancePCS to sell drugs for a prescription drug benefit plan. The complaint asserted an antitrust claim against AdvancePCS, alleging that it had engaged in an unlawful conspiracy with its Plan Sponsors to restrain competition in violation of the Sherman Act, 15 U.S.C. § 1. In particular, Plaintiffs alleged that AdvancePCS used the combined economic power of its Plan Sponsors to reduce the contractual amount it pays to retail pharmacies below the levels that would prevail in a competitive marketplace. Plaintiffs also alleged that the Agreements impose certain limitations on drug refills and co-payment charges to plan members. The complaint sought treble damages, injunctive relief, attorneys' fees, and costs. The case was initially assigned to Judge Eduardo C. Robreno.

As noted at the outset, for more than ten months following the filing of the complaint, AdvancePCS actively—and, indeed, aggressively—litigated the case without mentioning arbitration, much less filing a motion to compel arbitration. On September 25, 2003, more than a month after the complaint was filed, AdvancePCS filed a nineteen-page motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs suffered no antitrust injury, failed to allege a *per se* price-fixing agreement, and failed to allege any rule of reason price-fixing agreement. With the motion, AdvancePCS submitted a binder of allegedly judicially-noticeable exhibits—as "thick as the yellow pages," we are told, including three lengthy government-sponsored studies of the efficiency enhancing effects of PBMs, as well as AdvancePCS's own annual report to the SEC (Form 10-K), and other materials. Plaintiffs submitted a thirty-one page response brief, and AdvancePCS filed a seventeen-page reply brief, expanding upon its earlier presentation as it argued that

no antitrust injury had been alleged; that no *per se* price-fixing agreement had been alleged because the complaint lacked allegations of horizontal conspiracy, monopsony power, and supra-competitive output pricing; that Plaintiffs incorrectly interpreted materials of the U. S. Department of Justice and Federal Trade Commission ("FTC"); that price-fixing agreements by sellers should be treated differently; that Plaintiffs' authorities on monopsony power were inadequate; that buyer cartel cases were inapposite; and that the complaint failed to state a rule of reason antitrust violation.

On February 5, 2004, Judge Robreno held a hearing on the motion to dismiss, and on March 2, 2004, denied the motion in a detailed sixteen-page opinion, rejecting each of AdvancePCS's substantive antitrust arguments—Plaintiffs, the Court concluded, had standing and had alleged facts sufficient to state an antitrust claim. Two weeks later, on March 16, 2004, AdvancePCS filed a twelve-page motion to reconsider the denial of its motion to dismiss, or to certify it for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The motion to reconsider again urged dismissal based on the results of a recent FTC investigation into the acquisition of AdvancePCS by Caremark, Inc. Plaintiffs filed a fifteen-page response brief, and AdvancePCS replied.

At the same time in March 2004 as it filed its motion for reconsideration, AdvancePCS filed an answer to the complaint, and asserted a host of affirmative defenses, including failure to state a claim, lack of standing, lack of antitrust injury, laches, estoppel, waiver, failure to mitigate, failure to plead with particularity, and failure to join necessary and indispensable parties. On April 20, 2004, new counsel for AdvancePCS entered their appearances. A hearing was subsequently held on the motion for reconsideration, and on May 14, 2004, the motion was denied. Also on May 14, 2004, Judge Robreno ordered the parties to submit a discovery plan and a proposed case management order, and scheduled a pretrial conference for June 15, 2004. On consent, the conference was rescheduled to July 6, 2004.

Five weeks after Judge Robreno's latest order, and

6

after more than ten months of active and wholly unsuccessful litigation, on June 21, 2004, AdvancePCS filed a motion to compel arbitration asking the District Court, for the first time, to enforce the arbitration clause in the PPA and enter an order compelling arbitration of the case. Plaintiffs opposed the motion, arguing that AdvancePCS waived any right to arbitrate by actively litigating the case in federal court for as long as it did, and that the arbitration agreement was unenforceable for various reasons.

On August 24, 2004, Judge Robreno granted the motion to compel arbitration and stayed the District Court action. He concluded that Plaintiffs had entered into enforceable arbitration agreements that encompassed the antitrust claims, and that AdvancePCS had not waived its right to seek arbitration. Plaintiffs filed a motion for reconsideration or, in the alternative, for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Judge Robreno denied reconsideration and certification, and ordered that the case remain stayed in accordance with the Federal Arbitration Act ("FAA").

Plaintiffs, however, did not thereafter initiate arbitration proceedings. Rather, on May 19, 2006, Plaintiffs filed a motion to lift the stay and dismiss the complaint. In the motion, Plaintiffs represented that they did not intend to arbitrate their claims, and instead wished to dismiss the complaint so that they could pursue an appeal of the decision to compel arbitration. While this motion was pending, the case was transferred by the Judicial Panel on Multidistrict Litigation to Judge John P. Fullam for consolidated pretrial proceedings with five other similar antitrust actions against PBMs.

On December 7, 2006, Judge Fullam convened a status conference in the MDL proceedings and heard argument on the motion to lift the stay and dismiss the complaint. Following the conference, Judge Fullam *sua sponte* issued an order vacating Judge Robreno's order compelling arbitration, concluding that "the parties never intended this type of litigation to be submitted to arbitration," and "that the

7

Arbitration Agreement is unenforceable because it violates public policy." (App. 309.) Judge Fullam thus denied as moot the Plaintiffs' motion to dismiss their complaint to seek appellate review.

AdvancePCS filed an immediate appeal to this Court pursuant to 9 U.S.C. § 16(a)(1)(A) & (B). Concluding that Judge Fullam's order violated the law of the case doctrine, we vacated that order, and remanded with directions to reinstate Judge Robreno's order compelling arbitration.

On November 5, 2009, following remand, Plaintiffs renewed their motion to dismiss their complaint to permit an immediate appeal of Judge Robreno's reinstated order compelling arbitration. While this motion was pending, the case was reassigned to Judge C. Darnell Jones. The parties were ordered to submit supplemental briefs, and oral argument was held. On January 27, 2012, Judge Jones granted Plaintiffs' motion and dismissed their claims with prejudice. Plaintiffs appealed.

## II. Jurisdiction

AdvancePCS questions our jurisdiction to hear this appeal. Under the FAA, a party may generally *not* appeal from an interlocutory order "compelling arbitration" or "granting a stay" pending arbitration. 9 U.S.C. § 16(b)(1) & (b)(3). Thus, Judge Robreno's order compelling arbitration was, at least initially, non-reviewable. In an effort to circumvent the nonappealabilty of Judge Robreno's order, Plaintiffs sought several times, and eventually obtained, an order lifting the stay and dismissing their complaint with prejudice.

The FAA provides that an "appeal may be taken from . . . a final decision with respect to an arbitration that is subject to this title." *Id*. § 16(a)(3). Where a district court compels arbitration and *dismisses* the federal lawsuit (rather than staying it), the Supreme Court has held that is a "final decision with respect to an arbitration," and an appeal may then be taken challenging the order compelling arbitration.

8

*Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89 (2000). This is true whether the dismissal of the case is with or without prejudice. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 600-02 (3d Cir. 2002). The Supreme Court reasoned that the phrase "final decision with respect to an arbitration" has the same meaning as "final decision" in other contexts, and refers to a decision that "'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'" *Randolph*, 531 U.S. at 86 (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) and *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978)). The "judgment" to be executed upon is not the underlying complaint, but a "new" and "separate" proceeding in the District Court to enter judgment on the arbitration award or vacate or modify that award.

AdvancePCS attempts to distinguish *Randolph* and *Blair*, arguing that those cases involved *involuntary* dismissals of the plaintiffs' claims simultaneous with the order compelling arbitration, whereas Plaintiffs sought a *voluntary* dismissal of their complaint after the fact. AdvancePCS contends that Plaintiffs are thus seeking an "end run" around the nonappealability of Judge Robreno's order. If Judge Robreno had dismissed Plaintiffs' claims at the *same time* he compelled arbitration, there would be no doubt as to our jurisdiction under *Randolph* and *Blair*.

In essence, though, Judge Jones' dismissal order *modified* Judge Robreno's order by substituting a dismissal for the stay, thus putting Plaintiffs in a functionally-identical position to the plaintiffs in *Randolph* and *Blair*. Just as in those cases, the ultimate dismissal was an order that ended the litigation on the merits and left nothing more for the District Court to do but execute the judgment. It is thus a "final decision with respect to an arbitration" within the meaning of 9 U.S.C. § 16(a)(3). The fact that Plaintiffs obtained the dismissal in a different manner is irrelevant because, as we have noted, "[t]he [*Randolph*] decision draws a distinction between dismissals and stays, but does not draw any distinctions within the universe of dismissals." *Blair*, 283 F.3d at 602. Accordingly, we have subject matter jurisdiction.

9

## III. Discussion

Congress enacted the FAA in 1925 to counteract "the traditional judicial hostility to the enforcement of arbitration agreements." *Alexander v. Anthony Intern., L.P.*, 341 F.3d 256, 263 (3d Cir. 2003). "Under the FAA, such agreements are enforceable to the same extent as other contracts." *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) (internal quotation marks omitted). There is a strong federal policy in favor of arbitration, and a "party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." *Alexander*, 341 F.3d at 263; *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (noting that "the Court has also long recognized and enforced a liberal federal policy favoring arbitration agreements"). When a federal court addresses a motion to compel arbitration, it is "limited to a narrow scope of inquiry." *Gay v. CreditInform*, 511 F.3d 369, 386 (3d Cir. 2007) (internal quotation marks omitted). The court may consider only narrow "gateway matters" that touch on the question of arbitrability, such as whether an arbitration agreement applies to a particular controversy, or whether the parties are bound by the arbitration clause. *Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 585 (3d Cir. 2007). "Thus, only when there is a question regarding whether the parties should be arbitrating at all is a question of arbitrability raised for the court to resolve. In other circumstances, resolution by the arbitrator remains the presumptive rule." *Id.* (internal citation and quotation marks omitted).

Plaintiffs concede that the PPA contains a broadly-worded arbitration clause that applies to "[a]ny and all controversies in connection with or arising out of th[e] Agreement." Moreover, Plaintiffs do not seriously dispute that their antitrust claim against AdvancePCS is a controversy arising out of the PPA and thus falls within the scope of the

arbitration clause.[1]    Rather, Plaintiffs argue that Judge Robreno incorrectly decided several questions of arbitrability and erred in granting the motion to compel arbitration because: (1) AdvancePCS waived its right to arbitrate; and (2) the arbitration clause is unenforceable.  As noted above, we agree on the waiver issue and thus do not reach the issue of enforceability.

Plaintiffs' primary argument on appeal is that Judge Robreno erred in compelling arbitration because AdvancePCS waived its right to arbitrate by actively litigating the case in federal court for more than ten months while remaining silent about arbitration.  Judge Robreno concluded that the issue of waiver was for the arbitrator (not the Court) to decide and that, in any case, Plaintiffs had failed to show prejudice resulting from AdvancePCS's delay in asserting the arbitration clause.  We exercise plenary review over the question of "whether a party through its litigation conduct, waived its right to compel arbitration." *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011) (internal quotation marks omitted).  To the extent that a district court makes factual findings in making this determination, we review its findings for clear error. *Id.*

At the time Judge Robreno issued his order compelling arbitration, the law was unclear as to whether waiver was an issue that should be decided by the district court or the arbitrator.  Several years after that order, however, we made clear that "waiver of the right to arbitrate based on litigation conduct remains presumptively an issue for the court to decide." *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 221 (3d Cir. 2007).  The only question, then, is whether Judge

---

[1] Plaintiffs do argue that "[t]he express terms of the [arbitration] clause demonstrate that the parties did not intend to arbitrate antitrust claims."  (Appellants' Br. at 48.)  To the extent this is intended as an argument that the antitrust claims do not fall within the plain language of the arbitration clause, that argument has been waived because it was not raised before the District Court.  (App. 120-46, arguing only waiver & unenforceability).

11

Robreno erred in finding that Plaintiffs had failed to establish waiver.

## A.  Legal Standard for Assessing Waiver

"'Consistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred,'" and "'will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery.'" *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 208 (3d Cir. 2010) (quoting *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068-69 (3d Cir. 1995)).  A court may, however, refuse to enforce an arbitration agreement where a "party has acted inconsistently with the right to arbitrate, and we will not hesitate to hold that the right to arbitrate has been waived where a sufficient showing of prejudice has been made by the party seeking to avoid arbitration." *Id.* (internal citations and quotation marks omitted).

"[P]rejudice is the touchstone for determining whether the right to arbitrate has been waived by litigation conduct." *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 231 (3d Cir. 2008) (internal quotation marks omitted).  To aid the analysis of waiver questions, we have "identified six nonexclusive factors to guide the prejudice inquiry:"

> (1) timeliness or lack thereof of the motion to arbitrate; (2) extent to which the party seeking arbitration has contested the merits of the opposing party's claims; (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings; (4) the extent to which a party seeking arbitration engaged in non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and (6) the extent to which the parties have engaged in discovery.

*Gray Holdco,* 654 F.3d at 451 (citing *Hoxworth v. Blinder,*

12

*Robinson & Co., Inc.*, 980 F.2d 912, 926-27 (3d Cir. 1992)). These are known as the *Hoxworth* factors, and they are "generally . . . indicative of whether a party opposing arbitration would suffer prejudice attributable to the other party's delay in seeking arbitration." *Id.* The factors, however, are "nonexclusive" and "not all the factors need be present to justify a finding of waiver." *Nino*, 609 F.3d at 209. Rather, "the waiver determination must be based on the circumstances and context of the particular case." *Id.* (internal quotation marks omitted).

### B.    Application of the *Hoxworth* Factors

This first *Hoxworth* factor to consider is the timeliness of the motion to arbitrate. In this case, AdvancePCS filed its motion to compel arbitration on June 21, 2004, over ten months after Plaintiffs filed their complaint in federal court. A ten month delay is significantly longer than the cases in which we have found no waiver, *see Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 598 (3d Cir. 2004) (38 days); *PaineWebber*, 61 F.3d at 1069 (two months); *Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 680 (3d Cir. 2000) (one-and-a-half months); *Gavlik Constr. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 783–84 (3d Cir. 1975) (arbitration motion made "immediately" after removing case to federal court), and sits at the low end of the cases in which we have found waiver, *see Gray Holdco*, 654 F.3d at 454 (ten months); *Hoxworth*, 980 F.2d at 925 (11 months); *Nino*, 609 F.3d at 210 (15 months); *Ehleiter*, 482 F.3d at 223 (4 years). Furthermore, AdvancePCS has not offered any satisfactory explanation for its delay in asserting arbitration other than the fact that the motion was made (more than two months, we note) after it retained new counsel. *Gray Holdco*, 654 F.3d at 454 (finding significant that the party offered no explanation for its ten month delay). Therefore, this factor weighs in favor of finding waiver.

The second *Hoxworth* factor is the extent to which the party seeking arbitration has contested the merits of the opposing party's claims. In this case, prior to seeking arbitration, AdvancePCS filed thirty-eight pages of briefing

13

on its motion to dismiss for failure to state a claim—a motion which directly addressed the merits of Plaintiffs antitrust claims—and supported that briefing with a binder of materials and studies. After a hearing was held and the motion to dismiss was denied, AdvancePCS next filed a twelve-page motion for reconsideration, essentially re-urging dismissal based on the results of a recent FTC investigation. After holding a second hearing, the District Court denied the motion.

In sum, AdvancePCS directly contested the merits of Plaintiffs' case through what was, in essence, two motions to dismiss, with ample briefing and supporting documentation, and raised issues outside of the scope of the pleadings. This is significantly more activity on the merits than in cases in which we found no waiver, *see Palcko*, 372 F.3d at 598 (motion to dismiss but only for insufficient service of process); *PaineWebber*, 61 F.3d at 1069 (no briefing on the merits); *Wood*, 207 F.3d at 680 (a motion to dismiss); *Gavlik*, 526 F.2d at 783-84 (no contest on the merits), and appears to be at least comparable to (or stronger than) the cases in which we have found waiver, *see Nino*, 609 F.3d at 210-11 (no motions on the merits); *Ehleiter*, 482 F.3d at 223 (motion for summary judgment); *Hoxworth*, 980 F.2d at 925-26 (motion to dismiss for failure to state a claim, and opposition to motion for class certification); *Gray Holdco*, 654 F.3d at 456 (motion for preliminary injunction with evidentiary hearing, and opposition to motions to dismiss). This factor thus weighs in favor of finding waiver.

The third factor is whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to filing the motion to compel. Here, AdvancePCS gave no prior indication to Plaintiffs of its intent to arbitrate, and arbitration was not raised as a defense in its answer to the complaint or elsewhere. The facts of this case are thus stronger than the cases in which we have found no waiver, *see Palcko*, 372 F.3d at 598 (requested arbitration from opposing party before filing motion to compel); *PaineWebber*, 61 F.3d at 1065 (objected that claims were subject to arbitration 21 days after the filing of the plaintiff's state court complaint);

14

*Wood*, 207 F.3d at 680 (raised arbitration in joint discovery plan before bringing motion to compel), and are comparable to or stronger than the cases in which we have found waiver, *see Nino*, 609 F.3d at 211 (included mandatory arbitration as one of ten affirmative defenses in its answer); *Ehleiter*, 482 F.3d at 210-11 (no advanced notice); *Gray Holdco*, 654 F.3d at 457 (no advanced notice). This factor, too, weighs in favor of finding waiver.

The fourth *Hoxworth* factor is the extent to which the party seeking arbitration engaged in non-merits motion practice. AdvancePCS's non-merits motions dealt mostly with administrative and scheduling matters, such as motions for admission *pro hac vice*, for leave to file a reply brief, and to continue the pretrial conference. These motions were not contested. In addition, however, AdvancePCS also filed (together with its motion for reconsideration) a motion for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) seeking immediate appellate relief that likely would not have been available to it in the arbitral forum. These facts are stronger than the facts in those cases in which we have found no waiver, *see Palcko*, 372 F.3d at 598 (no non-merits motions mentioned); *Wood*, 207 F.3d at 680 (same); *Gavlik*, 526 F.2d at 783-84 (same); *but see PaineWebber*, 61 F.3d at 1069 (motion to dismiss *non pros*, i.e., for lack of prosecution), and sit near the low end of what we have found to support waiver in the past, *see Ehleiter*, 482 F.3d at 223 (motion to implead third party). Admittedly, however, the cases in which we have found waiver have tended to have somewhat more significant non-merits motion practice. *See Nino*, 609 F.3d at 212 (opposed three motions to compel discovery); *Hoxworth*, 980 F.2d at 925-26 (filed motions to disqualify counsel and stay discovery, and opposed motions to compel discovery). In any event, this factor is not an absolute requirement, and we *have* found waiver even where no significant non-merits motion practice occurred. *See Gray Holdco*, 654 F.3d at 456. Ultimately, however, this factor weighs slightly in favor of waiver or is (at worst) neutral.

The fifth factor is the party's acquiescence in a court's pretrial orders. Judge Robreno entered orders setting hearings

15

on AdvancePCS's motion to dismiss and motion for reconsideration. AdvancePCS attended and participated in these hearings. It also entered orders setting dates for the pretrial conference, and instructing the parties to submit a discovery plan and proposed case management order. Prior to filing its motion to compel arbitration, AdvancePCS did not object to any of these orders. Cases in which we have found no waiver generally were not litigated long enough to feature any acquiescence in pretrial orders, *see PaineWebber*, 61 F.3d at 1065; *Gavlik*, 526 F.2d at 783–84; *but see Wood*, 207 F.3d at 680 (filed a joint discovery plan), and AdvancePCS's actions in this case are at the low end of the level of acquiescence that has supported waiver in our other precedents, *see Gray Holdco*, 654 F.3d at 459-60 (attended three status conferences and a court-ordered mediation without objection, and filed a Rule 26(f) report); *Hoxworth*, 980 F.2d at 925 (participated in "numerous" pretrial proceedings); *Nino*, 609 F.3d at 212 (participated in ten pretrial conferences); *Ehleiter*, 482 F.3d at 223 ("scrupulously assented" to the trial court's orders, certified readiness for trial, and later sought a continuance and proposed new trial dates). Thus, this factor weighs somewhat in favor of waiver.

The sixth and final factor is the extent to which the parties have engaged in discovery. Plaintiffs concede that no discovery took place, which is identical to those cases in which no waiver was found. *See Palcko*, 372 F.3d at 598; *PaineWebber*, 61 F.3d at 1069; *Wood*, 207 F.3d at 680; *Gavlik*, 526 F.2d at 784. Our cases finding waiver have uniformly featured significant discovery activity in the district court. *See Nino*, 609 F.3d at 213 (parties engaged in "significant discovery," including interrogatories, disclosures, requests for production and depositions of four witnesses, as well as "significant discovery related motion practice"); *Ehleiter*, 482 F.3d at 224 (parties engaged in "extensive discovery," exchanging several sets of interrogatories, production requests, and expert reports, and deposing "numerous witnesses"); *Hoxworth*, 980 F.2d at 925-26 (parties engaged in several depositions, answered several discovery requests, and litigated discovery disputes); *Gray Holdco*, 654 F.3d at 460 (parties engaged in discovery related

16

to a preliminary injunction hearing, including eight depositions, extensive written discovery responses, and the exchange of over 20,000 pages of documents). Therefore, this factor cuts significantly against a finding of waiver.

On the whole, there is significantly more to support waiver here than in our cases in which the argument was rejected, but less overall to support waiver than in those cases in which waiver was found. In rejecting Plaintiffs' waiver argument, Judge Robreno relied heavily on the fact that no discovery had taken place. It is true that we have arguably placed special emphasis on this factor in the past. *See*, *e.g.*, *PaineWebber*, 61 F.3d at 1068-69 (stating that "waiver will normally be found only where the demand for arbitration came long after the suit commenced and *when both parties had engaged in extensive discovery*"). We have also repeatedly stated, however, that the *Hoxworth* factors are nonexclusive, and no one factor is determinative of the prejudice inquiry. *See*, *e.g.*, *Nino*, 609 F.3d at 209 ("As is evident by our repeated characterization of these factors as a nonexclusive list, *not all the factors need be present to justify a finding of waiver . . . .*"). Indeed, our sister circuits have found waiver even in cases where no discovery has taken place.[2] *See, e.g., La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010) (noting that "[n]o discovery took place" in the eleven months before arbitration was sought, "but the litigation was hardly dormant"); *Khan v. Parsons Global Servs., Ltd.*, 521 F.3d 421, 428 (D.C. Cir. 2008) (noting that the defendant's non-pursuit of discovery was not dispositive, especially where discovery would likely focus on matters in

---

[2] Plaintiffs cite *South Broward Hosp. Dist. v. Medquist, Inc.*, 258 F. App'x. 466, 468 (3d Cir. 2007), noting that the fact that the parties did not engage in discovery normally precludes a finding of waiver, but here it is outweighed by AdvancePCS's tactical decision to litigate extensively in federal court, including two motions to dismiss, before seeking to compel arbitration. Under our Internal Operating Procedures, we do not cite to our not precedential opinions, and do not do so here.

the defendant's possession and control).

Moreover, Judge Robreno gave little weight to AdvancePCS's motion to dismiss the case (and motion for reconsideration), concluding that "the Court's ruling on [those motions] dealt only with pleading issues of law placing the parties back at the starting gate of the litigation." Thus, he reasoned that "the case stands essentially as it did ten months ago, *i.e.*, with the pleadings now completed and the matter ready to proceed to discovery." While he may be correct that Plaintiffs' *legal position* was not compromised as a result of AdvancePCS's motions, in the years since that 2004 ruling we have reiterated that the prejudice needed to show waiver need not necessarily be "'substantive prejudice to the legal position of the party claiming waiver,' but also extends to 'prejudice resulting from the unnecessary delay and expense incurred by the plaintiffs as a result of the defendants' belated invocation of their right to arbitrate.'" *Nino*, 609 F.3d at 209 (quoting *Ehleiter*, 482 F.3d at 224). For example, we have stated that:

> '[W]here a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing . . . arbitration may more easily show that its position has been compromised, *i.e.*, prejudiced,' because under these circumstances we can readily infer that the party claiming waiver has already invested considerable time and expense in litigating the case in court, and would be required to duplicate its efforts, to at least some degree, if the case were now to proceed in the arbitral forum. Prejudice of this sort is not mitigated by the absence of substantive prejudice to the legal position of the party claiming waiver.

*Ehleiter*, 482 F.3d at 224 (quoting *Hoxworth*, 980 F.2d at 926). "In other words, the investment of considerable time and money litigating a case may amount to sufficient prejudice to bar a later-asserted right to arbitrate." *Nino*, 609

18

F.3d at 209. This is because arbitration is meant to streamline proceedings, reduce costs, and conserve resources, and none of these purposes are served "when a party actively litigates a case for an extended period only to belatedly assert that the dispute should have been arbitrated, not litigated, in the first place." *Id*. Thus, the mere fact that the motions to dismiss merely placed the parties "back at the starting gate of the litigation" is not dispositive.

In sum, aside from the lack of discovery, this case bears little resemblance to the cases in which we have found no waiver, and shares substantial similarity to the cases in which waiver was found. Plaintiffs made a showing on five of the six *Hoxworth* factors, and most notably demonstrated a delay approaching one year during which AdvancePCS aggressively sought a resolution on the merits. *Ehleiter*, 482 F.3d at 223 (finding waiver where the defendant "require[ed] plaintiff] to defend his claims on the merits and invit[ed] final resolution of the case in a judicial forum"). AdvancePCS's motions were not based solely on the pleadings, but were supported with substantial materials and facts outside the scope of the pleadings. We cannot ignore the time, expense, and legal fees Plaintiffs invested in defending their claims against these multiple attacks. *Gray Holdco*, 654 F.3d at 458-59 ("[W]e cannot ignore the legal expenses Cassady incurred while Gray sat on its arbitration rights"). This prejudice to Plaintiffs is illustrated by the fact that they chose to dismiss their complaint rather than arbitrate. If AdvancePCS had moved to compel arbitration immediately after the filing of the complaint, Plaintiffs would have been spared the time and expense of litigating for the next ten months because they would not have proceeded in arbitration and never would have had to face AdvancePCS's various motions, including its comprehensive motion to dismiss.

Judge Robreno issued the order compelling arbitration almost *eight years ago,* and did not have the benefit of our more recent decisions on waiver, such as *Gray Holdco* and *Nino*. Nevertheless, he put undue emphasis on the lack of discovery and did not conduct a proper "totality of the circumstances" analysis and weighing of the six *Hoxworth*

19

factors. The end result, as we stated in *Nino*, was that he "gave insufficient consideration . . . to the more practical question of whether [defendant] has acted inconsistently with the right to arbitrate." *Nino*, 609 F.3d at 209 (internal quotation marks omitted). A party such as AdvancePCS "should not be allowed to delay its demand for arbitration and use federal court proceedings to test the water before taking a swim," especially where the only explanation for the change in strategy from litigation to arbitration is that AdvancePCS "substituted attorneys." *Gray Holdco*, 654 F.3d at 453, 461 (internal quotation marks omitted). We acknowledge that "any doubts concerning the scope of arbitrable issues," including waiver, "should be resolved in favor of arbitration," *id*. at 451. Given the extent of AdvancePCS's litigation in federal court, however, and the fact that our review is *de novo*,[3] we do not doubt that the order compelling arbitration should be reversed.

## IV. Conclusion

For the foregoing reasons, we conclude that AdvancePCS waived its right to arbitrate, and we thus will

---

[3] AdvancePCS seems to contend that the conclusion that Plaintiffs had suffered no prejudice is a factual finding that should be reviewed under the clear error standard. (Appellee's Br. at 24.) While a district court's factual findings on any one of the individual *Hoxworth* factors are reviewed for clear error, the question of whether the factors in the aggregate amount to prejudice (and therefore waiver) is properly reviewed *de novo*. *Gray Holdco,* 654 F.3d at 451 ("We exercise plenary review over . . . [the question of] whether a party 'through its litigation conduct, waived its right to compel arbitration,'" quoting *Nino*, 609 F.3d at 200 (reversing a district court's finding of no waiver without mentioning that the court clearly erred); *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011) ("While the factual findings that led to the district court's conclusion of waiver are reviewed for clear error, the question of whether [a party's] conduct amounts to waiver is reviewed de novo.").

reverse the order of the District Court compelling arbitration.