IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| GORDON SCHUSTER, on behalf of himself, individually and on behalf of the Estate of RONALD SCHUSTER, DIANA YECKEL, individually, and PAT SCHUSTER, individually, | ) ) ) ) ) ) | No. 33242-0-III |
| Respondent, | ) ) | PUBLISHED OPINION |
| v. | ) ) ) | |
| PRESTIGE SENIOR MANAGEMENT, L.L.C., an Oregon Limited Liability Company, d.b.a. BLOSSOM CREEK SENIOR ALZHEIMER COMMUNITY; SENIOR RESOURCE GROUP, INC., a Washington Corporation; LSRF HUSKY OPS HOLDINGS, L.L.C., a foreign Limited Liability Company; PRESTIGE CARE, INC., a Washington Corporation, d.b.a. BLOSSOM CREEK SENIOR ALZHEIMER COMMUNITY; PRESTIGE SENIOR LIVING, L.L.C., an Oregon Limited Liability Company, d.b.a. BLOSSOM CREEK SENIOR ALZHEIMER COMMUNITY; WENATCHEE SENIOR CARE, L.L.C., formerly a Washington Limited Liability Company, formerly d.b.a. BLOSSOM CREEK SENIOR ALZHEIMER | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

No. 33242-0-III
*Schuster v. Prestige Senior Mgmt.*

COMMUNITY; KARL W. LAMBERT, )
A.R.N.P., an individual; REDIMEDI )
HOUSECALL, P.L.L.C., a Washington )
Professional Limited Liability Company; )
REDIMEDI CLINIC & HOUSECALL, )
P.L.L.C., a Washington Professional )
Limited Liability Company; JOHN DOE )
1, M.D., an individual; JOHN DOE 2, an )
individual; JOHN DOE 3, an individual; )
and JOHN DOE 4, an individual, )
)
                  Defendants, )
)
LSREF GOLDEN OPS 14 (WA), L.L.C., )
A Delaware Limited Liability Company, )
d.b.a. BLOSSOM CREEK SENIOR )
ALZHEIMER COMMUNITY; LAVIDA )
COMMUNITIES, INC. a Delaware )
Corporation; SRG SERVCO )
OPERATING, L.L.C., a Delaware )
Limited Liability Company; SRG )
SERVCO OPERATING L.L.C. acting )
through a separate series SRG LAVIDA )
OPS NW SERIES, an entity of unknown )
origin, )
)
                  Appellants. )

    FEARING, C.J. —

    *Put more succinctly, at some point a party seeking to enforce an arbitration agreement must use it or lose it.* Nino v. Jewelry Exch., Inc., *609 F.3d 191, 212 n.10 (3rd Cir. 2010).*

    We address under what circumstances a party waives the right to compel arbitration, pursuant to contract, by engaging in court litigation. In answering this question, we apply federal law. The trial court held that appellants waived this right by

2

lengthy litigation conduct. We agree and affirm the trial court's denial of the defense's motion to compel arbitration.

FACTS

We first introduce the parties. The lawsuit stems from the treatment and care of an elderly gentleman, Ronald Schuster, now deceased, at Blossom Creek Senior Alzheimer Community (Blossom Creek). Plaintiffs Pat Schuster, Gordon Schuster, and Diana Yeckel are respectively the widow, son, and daughter of Ronald Schuster. Gordon Schuster serves as personal representative of his father's estate.

The four named defendants, LSREF Golden Ops 14 (WA) LLC (LSREF), La Vida Communities Inc. (La Vida), SRG Servco as SRG La Vida Ops NW Series (SRG), and Servco Operating LLC (Servco), owned or managed Blossom Creek while Ronald Schuster resided at the community. We refer to the four companies collectively as the Blossom Creek entities or entities. Defendant Karl Lambert was Ronald Schuster's primary care provider while Schuster resided at Blossom Creek. Defendants Redimedi Clinic & Housecall PLLC and Omnicare Inc. are alleged to be related to Lambert. Blossom Creek Senior Alzheimer Community, Wenatchee Senior Care LLC, and Husky Ops Holdings LLC are named defendants, but not participants in the litigation.

In March 2009, Ronald Schuster entered Blossom Creek Senior Alzheimer Community, located in Wenatchee, Washington. On April 15, 2009, Gordon Schuster, as power of attorney for his father, signed an agreement with LSREF regarding the care of

his father at Blossom Creek. The agreement contained an optional provision for

mandatory arbitration:

> ## Arbitration
>
> BOTH PARTIES UNDERSTAND THAT AGREEING TO ARBITRATION IS NOT A CONDITION OF YOUR ADMISSION TO THE COMMUNITY. By initialing the line at the end of this paragraph, however, you agree that any and all claims and disputes arising from or related to this Agreement or to your residency, care or services at the Community, whether made against us or any other individual or entity, shall be resolved by submission to neutral, binding arbitration *in accordance with the Federal Arbitration Act*; except that any claim or dispute involving unlawful detainer proceedings (eviction) or any claims that are brought in small claims court shall not be subject to arbitration unless all parties involved agree to arbitrate such proceedings. Both parties give up their constitutional rights to have any such dispute decided in a court of law before a jury, and instead accept the use of arbitration. *Arbitrations shall be administered by the National Arbitration Forum under the Code of Procedure then in effect.* Arbitrations shall be conducted by a single arbitrator agreed to by the parties, or if the parties cannot agree upon an arbitrator, before an arbitrator assigned by the National Arbitration Forum. Arbitrations will be held at an agreed upon location, or in the absence of such agreement, at the Community. The dispute will be governed by the laws of Washington. The arbitrator's fee shall be shared equally by the parties. Any award by the arbitrator may be entered as a judgment in any court having jurisdiction. In reaching a decision, the arbitrator shall prepare findings of fact and conclusions of law. Each party shall bear its own costs and fees in connection with the arbitration. This arbitration clause binds all parties to this Agreement and their spouse, heirs, representatives, executors, administrators, successors, and assigns, as applicable. After termination of this Agreement, this arbitration clause shall remain in effect for the resolution of all claims and disputes that are unresolved as of that date.
>
> _____(Resident's initials)

Clerk's Papers (CP) at 634 (some emphasis in original). Gordon Schuster placed initials

at the end of the arbitration clause. The initials appear to be his individual initials rather

than his father's initials, and Gordon did not specify that he signed as power of attorney for his father.

The arbitration clause in Ronald Schuster's care agreement appointed National Arbitration Forum to administer any arbitration proceeding. In July 2009, the Hennepin County District Court, in Minnesota, entered a consent judgment in a suit brought by the Minnesota Attorney General against National Arbitration Forum. Under the judgment, National Arbitration Forum agreed to cease administering arbitration proceedings involving consumers, including patients or residents of an assisted living facility. In the Minnesota suit, the state attorney general accused National Arbitration Forum of violating state consumer fraud, deceptive trade practices, and false advertising laws by hiding financial ties to collection agencies and credit card companies that placed arbitration clauses in consumer contracts and used its arbitration services.

According to Gordon Schuster, on February 27, 2010, he visited his father at Blossom Creek and found his father overmedicated, emaciated, hungry, and thirsty. An ambulance took Ronald Schuster from Blossom Creek. He died on May 21, 2010. We know nothing of the events in Gordon Schuster's life between February 27 and May 21.

On August 17, 2010, the Schuster family informed Blossom Creek entities that the family intended to file suit for damages arising from alleged negligent care of Ronald Schuster. From August 2010 to November 2011, the Schuster family and the Blossom Creek entities frequently communicated about the Schusters' claims.

5

The facts succeeding the commencement of litigation loom more important on appeal than the facts preceding the filing of suit. On February 5, 2013, the Schuster family filed their first complaint. The family named LSREF Golden Ops 14 LLC as a defendant but did not name other Blossom Creek entities. On April 2, 2013, LSREF filed an answer to the complaint. The answer did not list arbitration as a defense or mention the need to arbitrate the claims asserted by the Schuster family. On April 30, 2013, the Schuster family filed their first amended complaint, which added the remainder of the Blossom Creek entities as defendants. The family filed a second amended complaint on May 17, 2013.

The parties exchanged written discovery requests. On August 20, 2013, the Schuster family moved to compel discovery of interrogatories and requests for production from the Blossom Creek entities. On August 26, LSREF responded to the Schusters' interrogatories and requests for production. On September 11, La Vida and SRG responded to the family's interrogatories and requests for production. On September 12, 2013, the Blossom Creek entities filed a brief in opposition to the Schuster family's motion to compel. The brief claimed that all relevant entities had responded to discovery requests. The brief did not mention the care agreement arbitration clause or suggest a need to arbitrate rather than litigate in court. The Schuster family struck its pending motion to compel.

On October 14, 2013, the Schuster family filed a second motion to compel

discovery. The motion complained that the Blossom Creek entities' August and September responses failed to fully answer the discovery requests. Among other purported shortcomings in the responses, the Blossom Creek entities omitted a privilege log for documents over which they claimed the attorney-client privilege, and the entities withheld names and addresses of former employees. The Blossom Creek entities responded to the motion to compel on October 25. On January 10, 2013, the trial court granted, in part, the second motion to compel. The order compelling discovery imposed sanctions on the Blossom Creek entities, which the entities later paid. The entities did not mention the necessity of arbitration when defending the second motion to compel.

On January 23, 2014, the Schuster family filed a third amended complaint. In February 2014, the Blossom Creek entities deposed plaintiffs Gordon Schuster, Diana Yeckel, and Pat Schuster. They also attended the deposition of Karl Lambert. On April 18, Karl Lambert and the Blossom Creek entities deposed Karl Steinberg, the Schuster family expert.

During a conversation between the Schuster family's counsel and the Blossom Creek entities' counsel, in July 2014, the entities first mentioned the arbitration clause in Ronald Schuster's care agreement. By the time of this conversation, the parties had communicated for three years and eleven months. The lawsuit had been pending for one year and five months.

On September 26, 2014, the Schuster family filed a fourth amended complaint.

7

On October 10, 2014, the Blossom Creek entities filed an answer to the third amended complaint and asserted as an affirmative defense that the Blossom Creek entities were entitled to arbitration. We do not know why the answer responded to the third amended complaint rather than the fourth amended complaint.

PROCEDURE

On November 24, 2014, the Blossom Creek entities filed a motion to compel arbitration. The Schuster family had filed the lawsuit one year and nine months earlier. The Schuster family objected to the motion to compel. In support of the objection, the family claimed it had incurred $10,000 in expenses and its attorneys had to date expended more than $70,000 in labor. One of the Schuster family's counsel also testified by declaration:

> Plaintiffs [the Schusters] have obtained nine declarations from former Blossom Creek employees. Had arbitration been proposed from the beginning, Plaintiffs would have tailored those declarations as testimony so that they may be entered at a hearing. Moreover, discovery through the National Arbitration Forum is limited to twenty-five written questions. Plaintiffs would not have propounded extensive interrogatories and requests for production had the matter been placed in arbitration. Nor would the Plaintiffs [have] filed motions to compel on some of those requests.
> . . . In addition, Plaintiffs' strategy surely would have changed due to the limiting costs of arbitration and the circumstances of this case; and,
> . . . There has been over five thousand productions in this case produced by Plaintiffs, LSREF/La Vida/SRG and Lambert/Redi-Medi entities.

CP at 897. We do not know if "five thousand productions" is the delivery of five thousand documents or five thousand pages. In its response to the motion to compel

arbitration, the Schuster family informed the trial court of the Minnesota judgment that precluded National Arbitration Forum, the care agreement's assigned administrator of arbitration, from administering consumer claims.

The trial court denied the motion to compel arbitration. The court first ruled that the forum selection clause appointing the National Arbitration Forum as the arbitration administrator was integral to the arbitration agreement, and, with the disqualification of the National Arbitration Forum as administrator, the Schuster family was no longer bound by the arbitration clause. The trial court also ruled that the Blossom Creek entities waived the provisions of the arbitration clause by its extended litigation conduct. In response to a motion for reconsideration, the trial court reversed its decision that the administration of arbitration by the National Arbitration Forum was integral to the agreement. The court, however, preserved the ruling denying the motion to compel on the ground of waiver.

## LAW AND ANALYSIS

The Blossom Creek entities appeal the trial court's ruling that they waived the right to enforce the arbitration agreement. The Schuster family cross appeals the trial court's ruling on reconsideration that the arbitration administrator clause was not an integral part of the arbitration agreement. Since we affirm the trial court's ruling on waiver, we do not address the cross appeal.

9

The Schuster family also contends that, even if we compel arbitration, the only parties subject to the arbitration agreement are the plaintiff Estate of Ronald Schuster and defendant LSREF. In other words, the Estate may continue with the lawsuit against other defendants, including other Blossom Creek entities, and the other plaintiffs may proceed with the lawsuit against all defendants, even LSREF. We need not address this contention either.

*Choice of Law*

Ronald Schuster's care agreement declares that the parties submit any dispute to arbitration in accordance with the Federal Arbitration Act, 9 U.S.C. §§ 1-14. Even without this mention of the Federal Arbitration Act, we would probably rule that the Federal Arbitration Act applies because the Blossom Creek entities likely engaged in interstate commerce. 9 U.S.C. §§ 1-2; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-13, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001). An arbitration agreement subject to the Federal Arbitration Act is governed by federal substantive law, including waiver principles. *Southland Corp. v. Keating*, 465 U.S. 1, 12, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984); *Kinsey v. Bradley*, 53 Wn. App. 167, 169, 765 P.2d 1329 (1989). All parties concur that federal law controls.

We sit in the awkward position of being a state intermediate appellate court tasked with applying federal law. We recognize we are bound by United States Supreme Court decisions with regard to interpretation and implementation of federal statutes. *James v.*

*City of Boise*, ___U.S.___, 136 S. Ct. 685, 686, 193 L. Ed. 2d 694 (2016); *Home Ins. Co. of New York v. N. Pac. Ry.*, 18 Wn.2d 798, 808, 140 P.2d 507 (1943); *N. Pac. Ry. Co. v. Longmire*, 104 Wash. 121, 125, 176 P. 150 (1918); *S.S. v. Alexander*, 143 Wn. App. 75, 92, 177 P.3d 724 (2008). The Supreme Court holds the responsibility to say what a federal statute means, and once the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law. *Nitro-Lift Tech., LLC v. Howard*, ___ U.S. ___, 133 S. Ct. 500, 503, 184 L. Ed. 2d 328 (2012).

Unfortunately United States Supreme Court decisions do not assist in resolving the Schuster family's claim of waiver. The Blossom Creek entities rely on one United States Supreme Court decision, *Green Tree Financial Corporation-Alabama v. Randolph*, 531 U.S. 79, 90-92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000). The entities argue that *Green Tree* supports the proposition that a plaintiff who initiates a lawsuit, despite an arbitration agreement, suffers only a "self-inflicted wound" as a result of litigation expenses, and, therefore, the plaintiff suffers no prejudice for purposes of waiver. However, *Green Tree* never mentions this "self-inflicted wound" theory and does not discuss waiver of arbitration.

We move to the intermediary United States appeals courts. Like most subject areas of federal law, scores of United States Circuit Court of Appeals opinions address the subject of arbitration waiver with the various circuits assuming varied slants. We bodily lie within the Ninth Circuit Court of Appeals. Nevertheless, we rule that we are

11

no more bound by Ninth Circuit cases than other Circuit Court of Appeals decisions.

Connecticut and Pennsylvania state courts follow their respective federal circuit Court of Appeals' decisions on federal law so that litigants do not improperly walk across the street to achieve a different result in federal court than would be obtained in state court. *St. Juste v. Comm'r of Corr.*, 155 Conn. App. 164, 177, 109 A.3d 523, *cert. granted*, 316 Conn. 901 (2015); *Vazquez v. Buhl*, 150 Conn. App. 117, 137, 90 A.3d 331 (2014); *Parr v. Ford Motor Co.*, 109 A.3d 682, 693 n.8 (Pa. Super. Ct. 2014), *appeal denied*, 123 A.3d 331 (Pa.), *cert. denied*, 136 S. Ct. 557 (2015). Washington courts have never embraced this parochial position. *S.S. v. Alexander*, 143 Wn. App. at 93 (2008). "We have never held that an opinion from the Ninth Circuit is more or less persuasive than, for example, the Second, Sixth, Seventh, Eighth, or Tenth Circuits." *In re Pers. Restraint of Markel*, 154 Wn.2d 262, 271 n.4, 111 P.3d 249 (2005).

In *W.G. Clark Construction Co. v. Pacific Northwest Regional Council of Carpenters*, 180 Wn.2d 54, 322 P.3d 1207 (2014), our high court followed the Ninth Circuit Court of Appeals' analysis on a federal Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461, question because of its persuasive reasoning, not because of our geographic situs. The Illinois Supreme Court refused to follow its federal Court of Appeals' decision when there was a split of authority among the federal circuits and the court believed a Seventh Circuit case was wrongly decided. *Weiland v.*

12

*Telectronics Pacing Sys., Inc.*, 188 Ill. 2d 415, 423, 721 N.E.2d 1149, 242 Ill. Dec. 618 (1999).

We need not necessarily follow any particular federal circuit court decisions in resolving the issue on appeal. When the lower federal courts are divided on a federal question such as the interpretation of federal statutes and the United States Supreme Court has not resolved the conflict, state courts may decide the question for themselves. *Home Ins. Co. v. N. Pac. Ry. Co.*, 18 Wn.2d at 808 (1943). Decisions of the federal circuit courts are "entitled to great weight" but are not binding. *Home Ins. Co. v. N. Pac. Ry. Co.*, 18 Wn.2d at 808 (1943); *e.g.*, *W.G. Clark Constr. Co. v. Pac. Nw. Reg'l Council of Carpenters*, 180 Wn.2d at 61 (2014). A state court is not bound by rulings on federal statutory law made by a federal court other than the United States Supreme Court. *State v. Burnett*, 93 Ohio St. 3d 419, 424, 2001-Ohio-1581, 755 N.E.2d 857. Lower federal court decisions, however, are persuasive. *State Bank of Cherry v. CGB Enters., Inc.*, 2013 Ill 113836, 984 N.E.2d 449, 459, 368 Ill. Dec. 503. In the absence of a United States Supreme Court decision, the weight we may give federal circuit and district court interpretations of federal law depends on factors such as uniformity of law and the soundness of the decisions. *S.S. v. Alexander*, 143 Wn. App. at 92 (2008); *State Bank of Cherry v. CGB Enters., Inc.*, 984 N.E.2d at 458 (2013). If the federal courts are split, we may elect to follow those decisions we believe to be better reasoned. *Weiland v. Telectronics Pacing Sys., Inc.*, 721 N.E.2d at 1154 (1999).

13

Of course, Washington Supreme Court precedent binds us, and we might face a quandary if we found state Supreme Court decisions to conflict with the best reasoned United States Circuit Court of Appeals' rulings. Fortunately, Washington Supreme Court decisions on waiver echo persuasive federal decisional law. Therefore, we focus on federal decisions. We briefly analyze, in an appendix, Washington decisions addressing arbitration waiver.

*Federal Arbitration Act and Waiver*

Section 2 of the Federal Arbitration Act states:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*

9 U.S.C. § 2 (emphasis added). This section declares a national policy favoring arbitration of claims. *Preston v. Ferrer*, 552 U.S. 346, 353, 128 S. Ct. 978, 169 L. Ed. 2d 917 (2008). This policy applies in state as well as federal courts. *Preston v. Ferrer*, 552 U.S. at 353; *Southland Corp. v. Keating*, 465 U.S. at 16.

9 U.S.C. § 2 permits a court to decline enforcement of an arbitration clause on legal and equitable grounds that would also permit avoidance of any contract. *Brown v. Dillard's*, 430 F.3d 1004, 1010 (9th Cir. 2005). Two equitable principles employed by all courts to preclude enforcement of a contract are equitable estoppel and waiver.

Estoppel and waiver are distinct concepts with differing elements.

A waiver is an intentional relinquishment or abandonment of a known right or privilege. *Schneckloth v. Bustamonte*, 412 U.S. 218, 238-39, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). Estoppel entails reliance on an adversary's conduct in such a manner as to change one's position for the worse and the reliance must have been reasonable in that the party claiming estoppel did not know nor should it have known that its adversary's conduct was misleading. *Lyng v. Payne*, 476 U.S. 926, 935, 106 S. Ct. 2333, 90 L. Ed. 2d 921 (1986); *Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S. Ct. 2218, 81 L. Ed. 2d 42 (1984). Waiver and estoppel are separate claims. *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir. 1994). Although waiver and estoppel are sometimes used interchangeably, there is a subtle but significant legal distinction between the two. *Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991). Strictly defined, waiver describes the act, or the consequences of the act, of one party only, while estoppel exists when the conduct of one party has induced the other party to take a position that would result in harm if the first party's act were repudiated. *Pitts*, 931 F.2d at 357. In contrast to waiver, estoppel involves some element of reliance or prejudice on the part of the party asserting estoppel. *Pitts*, 931 F.2d at 357. Waiver requires no reliance.

To be true to 9 U.S.C. § 2, courts should apply both waiver and estoppel to

motions to compel arbitration. Both doctrines are equally viable grounds that exist at law or in equity for the revocation of any contract. The party defending the motion to compel should be free to assert waiver or estoppel or even both. In turn, the court should analyze separately whether estoppel or waiver applies, and, if one defense to the motion survives, the court should deny the motion to compel. For some unknown reason, federal courts employ only waiver when addressing unenforceability of an arbitration clause. Courts have ignored estoppel as a ground to refuse ordering arbitration. Going further, courts have conflated the two concepts such that elements of estoppel have been incorporated into waiver. We discuss this error thorougher below. The Schuster family has not raised estoppel as a ground to deny arbitration.

In part because of a strong policy favoring arbitration, waiver is not a favored defense to compelling arbitration. Courts wish to encourage parties to resolve their legal disputes by arbitration. *Baltimore & Ohio Chicago Terminal R.R. Co. v. Wisconsin Cent. Ltd.*, 154 F.3d 404, 409 (7th Cir. 1998). Therefore, a party seeking to prove waiver has a heavy burden of proof. *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986). Any doubts concerning waiver should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d at 694 (9th Cir. 1986). This acclaimed policy and proclaimed burden of proof may lack any importance since courts readily apply waiver. No court has stated that the decision is a close call such that

it will follow the rule that waiver is disfavored and deny application of waiver in the pending case. Also, the Supreme Court, in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219-20, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985), clarified that there is no preference for arbitration over litigation and the policy favoring arbitration was one simply of enforcing contracts.

Waiver can be implied as well as express. *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995). Whether waiver occurs necessarily depends on the facts of the particular case and is not susceptible to bright line rules. *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993).

Under federal law, we review de novo the decision to deny a motion to compel arbitration. *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 716 (6th Cir. 2012); *Brown v. Dillard's, Inc.*, 430 F.3d at 1009 (9th Cir. 2005); *Baltimore & Ohio Chicago Terminal R.R. Co. v. Wisconsin Cent. Ltd.*, 154 F.3d at 408 (7th Cir. 1998). Therefore, appellate decisions often entail the weighing of facts. To the extent the trial court makes factual findings, we review the findings for clear error. *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3rd Cir. 2011). Our trial court entered no findings.

Most federal courts employ a three-part test for waiver. *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999). To establish waiver of the right to arbitration, the party opposing arbitration must demonstrate (1) knowledge of an existing right to compel arbitration, (2) acts inconsistent with that existing right, and (3) prejudice

17

to the party opposing arbitration resulting from such inconsistent acts. *Brown v. Dillard's*, 430 F.3d at 1012; *Stifel, Nicolaus & Co. v. Freeman*, 924 F.2d 157, 158 (8th Cir. 1991). This three-part test melds estoppel's element of prejudice into the doctrine of waiver.

The Blossom Creek entities admit knowledge of an existing right to compel arbitration. They dispute the second two elements. The entities contend that they acted consistent with the right to arbitrate, and the Schusters were not prejudiced by any inconsistent conduct. We now analyze the second and third elements of waiver.

### Inconsistent Conduct

Most federal decisions readily find inconsistent conduct by the party seeking arbitration. The decisions focus on prejudice instead.

The right to arbitrate is waived by conduct inconsistent with any other intention but to forego a known right. *Se. Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC*, 588 F.3d 963, 968 (8th Cir. 2009); *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1988). A party acts inconsistently with its right to arbitrate if the party substantially invokes the litigation machinery before asserting its right to arbitration. *Se. Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC*, 588 F.3d at 968. A party substantially invokes the litigation machinery when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner. *Se. Stud &*

18

*Components, Inc. v. Am. Eagle Design Build Studios, LLC*, 588 F.3d at 968. Filing an answer and asserting affirmative defenses without raising the right to arbitration is inconsistent with the arbitration right. *Leadertex, Inc. v. Morganton Dyeing & Finishing, Corp.*, 67 F.3d 20, 26 (2d Cir. 1995). An extended silence before demanding arbitration indicates a conscious decision to continue judicial resolution of arbitrable claims. *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d at 759 (9th Cir. 1988).

A demand for arbitration, like the invocation of a forum-selection clause or any other claim of improper venue, must be made as early as possible so that the other party can know in what forum he has to proceed. *Baltimore & Ohio Chicago Terminal R.R. Co. v. Wisconsin Cent. Ltd.*, 154 F.3d at 408 (7th Cir. 1998). Although delay alone is not sufficient to find waiver, waiver is more likely to be found the longer the litigation elapses. *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002). In *Gray Holdco, Inc. v. Cassady*, 654 F.3d at 457-58 (3rd Cir. 2011), the court noted that a ten month delay was substantially longer than any other delay encountered wherein they did not rule a waiver. The longest case it listed, wherein the court did not find a delay, was two months. The Blossom Creek entities' delay was eighteen months.

In *Menorah Insurance Co. v. INX Reinsurance Corp.*, 72 F.3d 218, 222 (1st Cir. 1995), the court concluded the defendant acted inconsistently and waived its right to arbitrate when it chose not to invoke arbitration from July 1992 until October 1993 and the plaintiff bore the costs of a lawsuit in the meantime. In *Stone v. E.F. Hutton & Co.*,

19

898 F.2d 1542, 1544 (11th Cir. 1990), the court held the defendant acted inconsistently and waived its right to arbitrate when it delayed its assertion of that right for twenty months. In *Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464, 468 (10th Cir. 1988), the court concluded that Shearson's actions were inconsistent with its alleged intent to arbitrate because it engaged in depositions and prepared for a scheduled trial without objecting on the grounds of arbitration. In *National Foundation for Cancer Research v. A.G. Edwards & Sons Inc.*, 821 F.2d 772, 775 (D.C. Cir. 1987), the court found waiver when the defendant invoked the litigation machinery by filing an answer without asserting arbitration as an affirmative defense, requesting documents and deposing plaintiff's witnesses, opposing plaintiff's motion to amend its complaint, and moving for summary judgment.

The Blossom Creek entities argue that they never acted inconsistent with the right to arbitrate because they never asked the court to resolve an arbitrable issue and they did not engage in extensive motion practice. Nevertheless, the movant's litigation of the merits of the arbitrable issue is a factor weighing in favor of waiver, but it is not controlling.

LSREF Golden answered the Schusters' first complaint in April 2013 without raising arbitration as a defense. Shortly thereafter, the Schusters brought the remaining Blossom Creek entities into the action. The entities did not assert the defense in an answer until their answer to the third amended complaint. One federal circuit has held

20

that the failure to raise arbitration in one's answer alone is inconsistent with any reliance on a right to arbitrate. *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d at 718 (6th Cir. 2012).

As the trial court noted, the Blossom Creek entities engaged in other inconsistent conduct when participating in lawsuit related discovery and motion practice. For over a year, the parties engaged in contentious discovery, and the Schusters brought two motions to compel discovery. The Blossom Creek entities deposed three of the plaintiffs, participated in the deposition of their expert, and responded to interrogatories and requests for production. Although the Blossom Creek entities engaged in active litigation with the Schusters, they did not mention in any pleading, motion, or argument the intent to arbitrate until October 2014, eighteen months after the Schuster family filed their complaint.

The Blossom Creek entities claim that their conduct was consistent with later demanding arbitration because they delayed asking for arbitration with the hope of settling the case. We find the argument unpersuasive for many reasons. First, the Blossom Creek entities forward no facts of any settlement discussions. Second, the parties had two and one-half years before the Schuster family filed suit to discuss settlement. Third, even if the Blossom Creek entities wished to settle after filing suit, they could have moved immediately to compel arbitration while engaging in negotiations. Moving to compel arbitration did not interfere with and may have expedited settlement.

21

Prejudice

A Nordic smorgasbord of United States Circuit Court of Appeals decisions greets us on the subject of prejudice for purposes of arbitration waiver. Oodles of federal appeals court decisions analyze the nature and extent of prejudice required and whether the nonmoving party suffered prejudice sufficient to harness waiver. The various circuits take differing views and apply distinct tests. Some courts consider the effects of the conduct of the moving party that were inconsistent with arbitration to constitute sufficient prejudice to the nonmoving party, thus blending the inconsistent action and prejudice prongs of waiver. We review the various positions taken by the circuits, but conclude that under most, if not all, circuits' rulings, the Schuster family shows sufficient prejudice.

Remember that waiver, in other contexts, requires no showing of prejudice by the party asserting the doctrine. Thus, at least two federal circuits have de-emphasized the prejudice prong of the waiver test with regard to a right to arbitrate. *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995); *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Alum. Prods. Co.*, 969 F.2d 585, 590 (7th Cir. 1992); *Nat'l Found. of Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772 (D.C. Cir. 1987). In *National Foundation of Cancer Research*, the District of Columbia Circuit found prejudice to the plaintiff by reason of an untimely motion to compel arbitration. Nevertheless, the court wrote, in part:

22

> This circuit has never included prejudice as a separate and independent element of the showing necessary to demonstrate waiver of the right to arbitration. We decline to adopt such a rule today.

821 F.2d at 777 (citation omitted).

The Seventh Circuit Court of Appeals has traveled the farthest in eliminating prejudice as an element of waiver. In *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388 (7th Cir. 1995), Cabinetree filed suit in a Wisconsin state court, in September 1993, against Kraftmaid, charging that Kraftmaid terminated the former's franchise in violation of the Wisconsin Fair Dealership Law. Kraftmaid removed the case to a federal district court. Discovery began. In January 1994, a trial date of December 6, 1994, was set. In response to Kraftmaid's discovery demands, Cabinetree produced almost two thousand documents. Kraftmaid untimely responded to Cabinetree's discovery demands. On July 11, 1994, Kraftmaid moved the district court to stay further proceedings pending arbitration of the parties' dispute pursuant to the franchise agreement. The district court denied the motion to order arbitration and the Court of Appeals affirmed.

On appeal, the *Cabinetree* court wrote that "to establish a waiver of the contractual right to arbitrate, a party need not show that it would be prejudiced if the stay were granted and arbitration ensued." 50 F.3d at 390. The court may have meant that the opposing party must show prejudice, but prejudice always ensues when a party seeks arbitration after first litigating in court. The court also penned: "we have deemed an

23

election to proceed in court a waiver of a contractual right to arbitrate, without insisting on evidence of prejudice beyond what is inherent in an effort to change forums in the middle (and it needn't be in the exact middle) of a litigation." *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d at 390. The *Cabinetree* court further declared that an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate. The court concluded that Kraftmaid should have filed a motion to compel arbitration at the same time it removed the suit to federal court. Otherwise, Kraftmaid manifested an intention to resolve the dispute through the processes of federal court. Despite its holding, the *Cabinetree* court noted that under some circumstances prejudice should be a factor to weigh in resolving waiver.

If we faced the need to decide whether prejudice is essential for waiver, we might follow the District of Columbia and Seventh Circuits and forgo the element, in part because of its inconsistency with the notion of waiver. Nevertheless, because of prejudice suffered by the Schuster family, we reserve this issue for another day.

United States Circuit Courts of Appeals, other than the Seventh Circuit and the District of Columbia Circuit, have held to the position that the party asserting waiver must show prejudice. *Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d 945, 949 (1st Cir. 2014); *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 108 (2d Cir. 1997); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 925-26 (3d Cir. 1992);

24

*Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 204 (4th Cir. 2004); *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497-98 (5th Cir. 1986); *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d at 720 (6th Cir. 2012); *Lewallen v. Green Tree Servicing LLC*, 487 F.3d 1085, 1093 (8th Cir. 2007); *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d at 694 (9th Cir. 1986); *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 773 (10th Cir. 2010); *S&H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990). Nevertheless, all of these circuits require little prejudice and do not demand strict proof of prejudice. The courts assume prejudice follows certain litigation practices.

The First Circuit Court of Appeals observed that, despite prejudice being essential for a waiver, the required showing is "tame at best." *Rankin v. Allstate Ins. Co.*, 336 F.3d 8, 14 (1st Cir. 2003). Some degree of prejudice ordinarily may be inferred from a protracted delay in the assertion of arbitral rights when that delay is accompanied by sufficient litigation activity. *Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd.*, 325 F.3d 54, 61 (1st Cir. 2003). This inference makes good sense since, during such a period of delay, the opposing party usually will incur costs, measured in both out-of-pocket expense and the value of time. *Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d at 949 (1st Cir. 2014).

In the Second Circuit Court of Appeals, the court will find sufficient prejudice to infer waiver when a party seeking to compel arbitration engages in discovery procedures

not available in arbitration, makes motions going to the merits of an adversary's claims, or delays invoking arbitration rights while the adversary incurs unnecessary delay or expense. *Cotton v. Slone*, 4 F.3d at 179 (2d Cir. 1993). No bright line defines prejudice. *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991). Neither a particular time frame nor dollar amount automatically results in such a finding. *Kramer v. Hammond*, 943 F.2d at 179. Prejudice is instead determined contextually, by examining the extent of the delay, the degree of litigation that has preceded the invocation of arbitration, the resulting burdens and expenses, and the other surrounding circumstances. *Kramer v. Hammond*, 943 F.2d at 179.

In *Cotton v. Slone*, 4 F.3d 176 (2d Cir. 1993), William Slone actively litigated the dispute in federal court. Both parties conducted discovery, with Slone initiating at least two depositions, including those of Julie Cotton and her expert witness. Slone made several substantive motions, including one for summary judgment. In resisting discovery, Slone repeatedly invoked and submitted himself to the powers and procedures of the district court. He sought extensions of time and revisions of the discovery schedule, and at least twice sought protective orders that were denied. The court reasoned that Slone's conduct imposed unnecessary expense and delay on Cotton, which would be compounded if she were required to arbitrate her claim. The court did not identify the expense and delay. The court held that the resulting prejudice to Cotton compelled a finding of waiver.

26

The Third Circuit Court of Appeals still maintains that prejudice is the touchstone for determining whether the right to arbitrate has been waived. *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d at 925 (3d Cir. 1992). The Third Circuit Court of Appeals, in *Hoxworth*, 980 F.2d at 926-27, identified six nonexclusive factors to guide the prejudice inquiry: (1) timeliness or lack thereof of the motion to arbitrate, (2) extent to which the party seeking arbitration has contested the merits of the opposing party's claims, (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings, (4) the extent to which a party seeking arbitration engaged in nonmerits motion practice, (5) the party's acquiescence to the court's pretrial orders, and (6) the extent to which the parties have engaged in discovery. *Gray Holdco, Inc. v. Cassady*, 654 F.3d at 451 (3rd Cir. 2011). Not all the factors need be present to justify a finding of waiver. *Nino v. Jewelry Exch., Inc.*, 609 F.3d at 208-09 (3rd Cir. 2010).

In *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, the court found a waiver following an eleven-month delay when the parties participated in numerous pretrial proceedings and engaged in extensive discovery. The discovery included depositions that could not be conducted in arbitration. Defendant brought a motion to dismiss the complaint and to disqualify plaintiff's counsel. The court held there to be ample record of prejudice, but did not identify the prejudice. The plaintiff did not quantify attorney fees and costs for tasks that might be repeated upon arbitration. We find no decision that

27

demands the resisting party quantify costs.

At least in one appeal, the Fourth Circuit Court of Appeals took a strict approach to prejudice. In *Patten Grading & Paving, Inc. v. Skanska USA Building, Inc.*, 380 F.3d at 208-09 (4th Cir. 2004), the court reversed the trial court and ruled the defendant had not waived its right to arbitration. The defendant waited eight months to compel arbitration, the parties had engaged in discovery and mediation, the court resolved one motion, and the plaintiff expended $5,862.52 to prosecute its case. In addition, the plaintiff would pay, upon commencing arbitration, a substantial initial fee to engage the American Arbitration Association.

The Sixth Circuit Court of Appeals has conflicting language in its decisions regarding prejudice. *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d at 720 (6th Cir. 2012) suggests some prejudice is needed. In *Germany v. River Terminal Railway Co.*, 477 F.2d 546, 547 (6th Cir. 1973), the circuit court recognized that a party may waive arbitration without the court discussing prejudice as a factor. In *American Locomotive, Co. v. Gyro Process Co.*, 185 F.2d 316, 320 (6th Cir. 1950), the circuit found waiver after recognizing the common law definition of "waiver" as being "an intentional relinquishment of a known right."

The Ninth Circuit Court of Appeals follows a rule requiring prejudice. In *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691 (9th Cir. 1986), the Court of Appeals could have resolved the case alone on the ground that the movant did not act inconsistently with

28

desiring arbitration because the law did not earlier permit arbitration. Once the law changed, the movant timely sought to compel arbitration. The court also resolved the appeal on the basis of lack of prejudice. The Fishers contended that a later assertion of the right to compel arbitration was prejudicial because they expended time, money, and effort on responding to pretrial motions, preparing for trial, and conducting extensive discovery of the arbitrable claims. The Ninth Circuit Court of Appeals disagreed. One of the Fishers' claims remained subject to the lawsuit and any discovery could be used in court to litigate the claim. The possibility that there might be some duplication in the parallel proceedings was not sufficient prejudice. The court also characterized any wound as "self-inflicted" since the Fishers willingly incurred the expense involved in litigation despite knowing of the arbitration agreement. *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d at 698.

The Ninth Circuit Court of Appeals' decision in *Fisher v. A.G. Becker Paribas, Inc.*, conflicts with the tenor of other circuits' decisions. No other circuit has imposed blame on the plaintiff for filing suit, despite the applicability of an arbitration agreement. No other circuit has characterized the cost of litigation to be self-inflicted by the plaintiff who files suit despite being party to an arbitration clause. Blame is more often imposed on a defendant for untimely seeking arbitration.

Some circuits have refined principles and adopted concrete rules with regard to waiver of arbitration. On the one hand, delay in seeking to compel arbitration does not

29

itself constitute prejudice. *Stifel, Nicolaus & Co. v. Freeman*, 924 F.2d at 159 (8th Cir. 1991); *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985). On the other hand, prejudice can result when a party too long postpones his invocation of his contractual right to arbitration and thereby causes his adversary to incur unnecessary delay or expense. *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d at 719-20 (6th Cir. 2012); *Kramer v. Hammond*, 943 F.2d at 179-80 (2d Cir.1991).

Prejudice can be found when a party gained a strategic advantage by obtaining something in discovery that would be unavailable in arbitration. *Stifel, Nicolaus & Co. v. Freeman*, 924 F.2d at 159 (8th Cir. 1991). By delaying a demand for arbitration, a party was able to obtain discovery it would not necessarily have been entitled to in an arbitration proceeding. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Alum. Prods. Co.*, 969 F.2d at 591 (7th Cir. 1992). Taking depositions of witnesses not available in arbitration proceedings is sufficient prejudice to find waiver of right to arbitrate. *Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Markets Corp.*, 996 F.2d 1478, 1480 (2d Cir. 1993).

In *Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d at 720, in addition to an eight-month delay and expenses involved with numerous scheduling motions and court-supervised settlement discussions, the parties engaged in discovery. The court concluded that the combination of all of these factors caused plaintiffs to suffer actual prejudice. Plaintiffs represented that they engaged in more discovery than would be

30

permitted in arbitration.

Ronald Schuster's care agreement assigned the task of administering arbitration to the National Arbitration Forum. Neither party submitted to this court the National Arbitration Forum's Code of Procedure. Therefore, we do not know the full extent to which the Forum's procedures would have limited discovery. The Schuster family provided a declaration that only twenty-five written questions would be permitted and the Blossom Creek entities did not dispute this testimony.

Because of a court order, the National Arbitration Forum would not have administered any arbitration. Thus, we cannot precisely gauge what discovery would have been permitted if the Blossom Creek entities timely demanded arbitration and the parties or the court appointed another arbitration administrator.

We do not impose blame on the Schuster family for being unable to exactly identify discovery prohibited in any arbitration. The Blossom Creek entities, not the Schuster family, chose the National Arbitration Forum as the administrator for any arbitration, an entity that entered a consent decree suggesting fraud on consumers. We observe from experience that nearly all arbitration rules from the various arbitration administrators limit discovery. It is well recognized that discovery generally is more limited in arbitration than in litigation. *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 286 (4th Cir. 2007). On this basis alone, we find sufficient prejudice to the Schuster family to affirm the trial court's ruling of waiver.

31

The Schuster family suffered other prejudice. The Schuster family contends arbitration would change its strategy in forwarding claims against the Blossom Creek entities. In *Gray Holdco, Inc. v. Cassady*, 654 F.3d at 457-61 (3d Cir. 2011), the court noted that a party's capacity to develop a litigation strategy with regard to the likelihood of arbitration diminishes the longer the case is litigated with no indication that a motion to compel arbitration is forthcoming. Notice of arbitration could change a party's approach to discovery as well as its litigation strategy based on whether it could recover attorney fees.

The Schuster family claims prejudice also in the preparation of witness statements. The family attorneys procured written statements from employees of the Blossom Creek entities. If the family knew that the dispute would have been resolved by arbitration, the attorneys would have prepared the statements for a form acceptable to the arbitrator. We accept the Schuster family's contention that, with arbitration, it will need to repeat work in preparing the witness statements.

As another important counterweight, arbitrations are not bound by rules of evidence. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991). Consequently, a party's evidentiary and discovery needs will substantially differ on whether a case is litigated or arbitrated. *Nino v. Jewelry Exch., Inc.*, 609 F.3d at 211 n.9.

Participating in litigation for a year and one-half when the Blossom Creek entities

32

could have immediately demanded arbitration also constitutes prejudice. The investment of considerable time and money litigating a case may amount to sufficient prejudice to bar a later asserted right to arbitrate. *Nino v. Jewelry Exch., Inc.*, 609 F.3d at 209. Arbitration is meant to streamline the proceedings, lower costs, and conserve private and judicial resources, and it furthers none of those purposes when a party actively litigates a case for an extended period only to belatedly assert that the dispute should have been arbitrated, not litigated, in the first place. *Nino v. Jewelry Exch., Inc.*, 609 F.3d at 209 (3rd Cir. 2010). Prejudice includes the time a party expends and money paid to educate an attorney to prepare for a trial instead of the expedited procedure of arbitration. *Gray Holdco, Inc. v. Cassady*, 654 F.3d at 458 (3d Cir. 2011). The cost of paying an arbitrator also constitutes prejudice. *Gray Holdco, Inc. v. Cassady*, 654 F.3d at 458 (3d Cir. 2011). We know from experience that the Schuster family would pay a substantial sum, including a down payment, for arbitration. They already paid taxes to support the court legal system.

When declaring a waiver, many courts find that the resisting party suffered prejudice well beyond the prejudice incurred by the Schuster family. One form of prejudice is a substantive motion from the party seeking arbitration having been denied by the court. The Schuster family never faced a substantive motion by the Blossom Creek entities. Nevertheless, the Schuster family suffered prejudice considered sufficient by some courts. The Schuster family responded to discovery, including five thousand

33

productions. The Schuster family needed to engage the assistance of the superior court in order to obtain full discovery from the Blossom Creek entities. The court imposed, and the defendants paid, sanctions. The Blossom Creek entities conducted depositions of all three plaintiffs and their expert.

In *St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Products Co.*, 969 F.2d at 591 (7th Cir. 1992), the court held the plaintiff to have been prejudiced simply by the defendant's filing of interrogatories and requests to admit and the participation in the depositions of two of plaintiff's principal witnesses. In *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191 (3rd Cir. 2010), the court refused to compel arbitration when the parties engaged in discovery over fifteen months, despite no dispositive motion being brought.

In reviewing the Third Circuit Court of Appeals' six factors, we conclude that the factors weigh in favor of waiver. The Blossom Creek entities untimely filed a motion to compel arbitration. Through extensive discovery, the defendants contested the merits of the Schuster family's claims. The Blossom Creek entities first mentioned arbitration after the lawsuit had been pending for one year and five months. Even then, we have no record of the Blossom Creek entities expressly stating an intent to compel arbitration. The record only shows that their counsel remarked about the arbitration clause. Only one factor favors the defense. The entities did not engage in motion practice that addressed the merits of the suit. Otherwise, the Blossom Creek entities acquiesced in the trial

34

court's order compelling discovery and awarding sanctions. The parties engaged in extensive discovery, including interrogatories, requests for production, and depositions. To our knowledge, the Blossom Creek entities have taken all of the depositions it desires. The defendants do not dispute that the court litigation process allowed them to gain more discovery than available in arbitration.

In addition to the Ninth Circuit's ruling in *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691 (9th Cir. 1986), other decisions provide support to the Blossom Creek entities' position. *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324 (5th Cir. 1999); *Rush v. Oppenheimer & Co.*, 779 F.2d 885 (2d Cir. 1985); *Shinto Shipping Co. v. Fibrex & Shipping Co.*, 572 F.2d 1328 (9th Cir. 1978). Yet, the overwhelming majority of cases support waiver under our appealed facts. Also, the Schuster family shows more prejudice than the plaintiffs suffered in those decisions supporting the Blossom Creek entities.

The Blossom Creek entities claim the Schuster family failed to show prejudice because additional discovery beyond what arbitration would allow benefitted, not harmed, the family, any increased costs from compelling arbitration is speculative, and the Schusters would have paid arbitration costs even if the Blossom Creek entities compelled arbitration at the beginning. The Blossom Creek entities also emphasize that the Schuster family fails to quantify the costs incurred as a result of the lawsuit in superior court. The family's attorneys identify costs of $10,000 and labor incurred of $70,000, but do not separate from these totals the amount of costs and attorney labor that

35

would have been expended if the defendants timely sought arbitration. These arguments from the Blossom Creek entities lack support in most federal cases on waiver. No federal case has demanded that the party opposing the motion to compel arbitration quantify costs.

One factor not mentioned by the parties arises from the defrocking of the National Arbitration Forum. Assuming we compelled arbitration, the parties would assume the task and expense of appointing a new arbitrator or arbitration administrator. If the parties did not agree, they would assume the expense of litigating the appointment. We recognize this expense alone cannot be the basis for waiver, otherwise, the disqualification of the contract's appointed arbitrator or arbitration administrator would always lead to a waiver. Nevertheless, the expense of appointing an arbitrator in these unusual circumstances adds to the prejudice suffered by the Schuster family.

Despite reviewing the question of waiver de novo, we recognize the trial court to be in a good, if not better, position to comprehend the prejudice that results from a party participating in a lawsuit for more than a year and then demanding arbitration. The trial court personally participated in the motion practice that occurred during the pendency of the suit in superior court. By untimely demanding arbitration, the Blossom Creek entities not only expended the Schuster family's time and money but also unnecessarily consumed the superior court's scarce time and resources. Waiver of the right to arbitrate predicated on a party's litigation conduct effectuates the principle that a party may not

No. 33242-0-III
*Schuster v. Prestige Senior Mgmt.*

use arbitration to manipulate the legal process and, in that process, waste scarce judicial resources. *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 348 (5th Cir. 2004); *Gray Holdco, Inc. v. Cassady*, 654 F.3d at 453-54 (3rd Cir. 2011).

## CONCLUSION

We affirm the trial court's ruling that the Blossom Creek entities waived the right to arbitrate the dispute with the Schuster family. We remand the suit for further proceedings before the superior court.

Fearing, C.J.

WE CONCUR:

Siddoway, J.

Lawrence-Berrey, J.

37

Appendix A
Washington Law

The Washington Supreme Court's latest discussion of waiver of arbitration comes in *Townsend v. Quadrant Corp.*, 173 Wn.2d 451, 268 P.3d 917 (2012). Homeowners brought action against their builder and its parent companies for fraud, negligence, negligent misrepresentation, and rescission. They also asked the court to void an arbitration clause for unconscionability. Parent companies brought a summary judgment motion to dismiss on the basis that they were not proper parties to the suit. After losing the motion, the two companies successfully sought to compel arbitration. The Supreme Court considered the initial motion to dismiss consistent with the later motion to compel arbitration, perhaps because the motion to dismiss did not address the merits of the plaintiffs' claims. The court held there was no waiver. The court did not mention prejudice as an element of arbitration waiver.

In *Otis Housing Association v. Ha*, 165 Wn.2d 582, 201 P.3d 309 (2009), the court, in a 5-4 decision, held that an optionee under a lease agreement waived the right to arbitration of claims because of a failure to assert the claims during an unlawful detainer action. The optionee defended the unlawful detainer action by asserting the option to purchase the property prevented an eviction, but did not mention the option's arbitration clause. The court held that defending the unlawful detainer action without seeking arbitration was inconsistent with an intent to arbitrate. The court did not mention any

requirement that the nonmoving party assert or show prejudice. Thus, Washington law may reject prejudice as an element of arbitration waiver. The dissent also did not mention prejudice, but rather mentioned that waiver requires a voluntary and intentional relinquishment of a known right. Both the majority and dissenting opinions relied only on state law.

In *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 103 P.3d 773 (2004), an employer sought to compel arbitration under the employment agreement. The trial court granted the motion to compel and the Supreme Court affirmed. Although the employer engaged in mediation before the employee filed suit, the employer, in its answer to the complaint, raised the defense of arbitration. The employer promptly brought a motion to compel. The court did not mention prejudice as being an element of waiver. Instead, the Supreme Court, consistent with the distinction between waiver and equitable estoppel, analyzed separately whether the employee showed estoppel in order to preclude arbitration. Thus, Washington may be the only state to correctly distinguish between waiver and estoppel for purposes of the right to arbitrate. We find no other decision, in which a state court engaged in the two analyses.

In *Pedersen v. Klinkert*, 56 Wn.2d 313, 352 P.2d 1025 (1960), the defendant argued the trial court lacked jurisdiction over the dispute because the parties' contract contained an arbitration clause. The court not only ruled that an arbitration agreement does not wrest jurisdiction from the courts, but the defendant waived any right to arbitrate

because he failed to invoke the right upon commencement of suit. The decision omits a discussion of prejudice.

In *Wiese v. Cach, LLC*, 189 Wn. App. 466, 358 P.3d 1213 (2015), credit card debtors sued the assignee of the debt for civil conspiracy and violations of the Consumer Protection Act, chapter 19.86 RCW, and the Collection Agency Act, chapter 19.16 RCW. The assignee previously obtained judgments against the debtors. Upon the filing of the debtors' suit, the assignee immediately sought to compel arbitration. The debtors argued that the assignee waived the arbitration clause in the debt contract by previously filing suit to recover the debt. This court ruled that no waiver occurred because the suit against the assignee was on a dispute unrelated to the claim litigated in the assignee's suit. We cited federal decisions that hold that incurring of legal expenses inherent in litigation, without more, is insufficient evidence to justify a finding of waiver.

In *Saili v. Parkland Auto Center, Inc.*, 181 Wn. App. 221, 329 P.3d 915, *review denied*, 181 Wn.2d 1015 (2014), the buyer brought suit against the car dealership, asserting claims in connection with the purchase of the truck from the dealership and the dealership's later repossession of the truck and another vehicle. After the buyer moved for summary judgment, the dealership moved for an order staying proceedings and compelling arbitration. The trial court denied the motion and this court affirmed on the ground of waiver. We noted the dealership omitted any reference to arbitration in its answer, engaged in discovery, and waited until after the buyer brought a summary

judgment motion before seeking an order compelling arbitration. The delay lasted seven months.

In *Shepler Construction, Inc. v. Leonard*, 175 Wn. App. 239, 306 P.3d 988 (2013), the court held both parties waived arbitration. The plaintiff contractor brought suit to foreclose on a mechanic's lien. The defendant homeowner counterclaimed for defective construction. Neither party sought arbitration until six years after litigation began.

In *River House Development Inc. v. Integrus Architecture, PS*, 167 Wn. App. 221, 272 P.3d 289 (2012), the plaintiff filed suit and engaged in litigation but later requested arbitration. This court held that the plaintiff waived its right to arbitration when that party attended a status conference in person with the assigned judge, agreed to a case schedule and trial date, exchanged trial witness lists with the opposing party, participated in formal discovery and motion practice regarding discovery, and represented to the court that it was preparing for trial.

In *Verbeek Properties, LLC v. GreenCo Environmental, Inc.*, 159 Wn. App. 82, 246 P.3d 205 (2010), a landowner, who hired an environmental company to remediate the soil to meet Department of Ecology standards, brought action against the company, alleging breach of contract, fraud, negligent misrepresentation, and violation of Consumer Protection Act. The landowner also filed a motion to dismiss the environmental company's lien on its property for the contract amount withheld. This court ruled that landowner's failure to mention arbitration in its complaint against the

company was not a waiver of arbitration and the landowner did not waive the right to arbitrate through its preliminary attempt to remove the company's lien on the ground that it was frivolous.

In *Ives v. Ramsden*, 142 Wn. App. 369, 174 P.3d 1231 (2008), this court held that a defendant waived his right to arbitration when he answered the plaintiff's complaint without mentioning arbitration, engaged in extensive discovery, deposed witnesses, submitted and answered interrogatories, and prepared fully for trial without moving to stay the action to allow the parties to arbitrate. Three years and four months had elapsed since the complaint was filed and the party seeking arbitration did not raise the issue until the day before trial. This court did not require that the plaintiff show any prejudice.

In *Lake Washington School District No. 414 v. Mobile Modules Northwest, Inc.*, 28 Wn. App. 59, 621 P.2d 791 (1980), the defendant's answer referred to the arbitration clause and requested a stay of court proceedings pending arbitration. The defendant formally moved for a stay three months later. This court held that there was no waiver, emphasizing that the party preserved the right to arbitrate in its answer and that the three-month delay was insufficient to establish waiver.